## J. C. RAKES ET AL., APPELLEES, v. N. H. BROWN ET AL., APPELLANTS.

### [FILED MARCH 23, 1892.]

1. **Witnesses:** COMPETENCY. Under section 329 of the Code, a person, having a direct legal interest in the result of an action in which the adverse party is the representative of a deceased person, is precluded from testifying to any transaction or conversation had with such deceased person, unless the evidence of the deceased has been taken and read on the trial by the adverse party in regard to such transaction or conversation, or unless such representative has introduced a witness who has testified in regard to such transaction or conversation.

2. **Descent:** ADMINISTRATION. On the death of an intestate his lands immediately descend to his heirs subject to the right of possession by the administrator, pending administration, and to his power to sell the real estate to pay the debts of the estate, in case the personal property is insufficient for that purpose.

3. **Action Quia Timet:** DEATH OF PLAINTIFF: REVIVOR. Where, pending an action to set aside a deed to real estate, and to quiet title, the plaintiff dies intestate, the action may be revived and continued in the names of the heirs at law of such deceased person.

4. **Revivor.** The mode provided by title 13 of Civil Code, for reviving actions by conditional order of revivor, is not exclusive. Section 45 of the Code confers authority upon the court to allow the action to be prosecuted by or against the representatives or successors in interest of a deceased party. For this purpose supplemental pleadings may be filed and summons served as in the commencement of an action. (*Fox v. Abbott*, 12 Neb., 333; *Carter v. Jennings*, 24 O. St., 182.)

5. ———. *Held*, That the present case was properly revived in the names of the heirs of the deceased plaintiff.

6. **Evidence** *held* to sustain the findings and decree of the district court.

APPEAL from the district court for Cass county. Heard below before CHAPMAN, J.

*Gregory, Day & Day,* for appellant Brown, cited: Tiedeman, Real Prop., sec. 801; *Rockwell v. Brown,* 54 N. Y., 213; *Murdock v. Gilchrist,* 52 Id., 246; *Lake v. Gray,* 35 Ia., 462; *Rhine v. Ellen,* 36 Cal., 362; *Stritz v. Hartman,* 26 Neb., 33; *Sprague v. White,* 35 N. W. Rep. [Ia.], 751; *Taylor v. R. Co.,* 8 Pac. Rep. [Cal.], 436; *Hodge Ex's v. Amerman,* 2 Atl. Rep. [N. J.], 257; *Hafter v. Strange,* 3 S. Rep. [Miss.], 190; *Loomis v. Wadham,* 8 Gray [Mass.], 557; *Church v. Burghardt,* 8 Pick. [Mass.], 127; *Pancake v. Cauffman,* 7 Atl. Rep. [Pa.], 67; *Pritchard v. Pritchard,* 34 N. W. Rep. [Wis.], 506; *Johnson v. Johnson,* 52 Ia., 586; *Townsend v. Little,* 109 U. S., 504; *Fair v. Stevenot,* 29 Cal., 486; *Truesdale v. Ford,* 37 Ill., 210; *Smith v. Yule,* 31 Cal., 181; *Hansen v. Berthelsen,* 19 Neb., 439; *Smith v. Palmer,* 6 Cush. [Mass.], 513.

*Davis & Stevens (Jacob Fawcett,* of counsel), cited: *Hatch v. Bayley,* 12 Cush. [Mass.], 27; *Lynn v. R. Co.,* 60 Md., 404; *Mead v. Conroe,* 113 Pa. St., 220; *Burnham v. Noyes,* 125 Mass., 85; *Allen v. Wheeler,* 4 Gray [Mass.], 123; *Magenau v. Bell,* 14 Neb., 7; *Miller v. Hurford,* 13 Id., 22; *Roberts v. Swearingen,* 8 Id., 371.

*Byron Clark,* and *A. N. Sullivan, contra,* cited: *Pell v. McElroy,* 36 Cal., 268; *Sheerer v. Cuddy,* 24 Pac. Rep. [Cal.], 713; *Wood v. Krebbs,* 30 Gratt. [Va.], 715; *Rorer Iron Co. v. Trout,* 5 Am. St. Rep. [Va.], 297; *Baynard v. Norris,* 46 Am. Dec. [Md.], 647; *Pendleton v. Fay,* 2 Paige [N. Y.], 202; *Graff v. Castleman,* 16 Am. Dec. [Va.], 741; *Baxter v. Sewell,* 3 Md., 341; *Daniels v. Davidson,* 16 Ves. [Eng.], 247; *Boone v. Chiles,* 10 Pet. [U. S.], 211; *Forey v. Bigelow,* 56 Ia., 383; *Booth v. Small,* 25 Id., 179; *Clement v. Perry,* 34 Id., 564; *Roger v. Hussey,* 36 Id., 667; Tiedeman, Real Estate, sec. 697.

23

NORVAL, J.

This action was commenced in the court below on the 30th day of January, 1888, by John C. Rakes to set aside two warranty deeds and a mortgage covering the northwest quarter of section 6, in township 10 north, of range 14 east, in Cass county, and to quiet the title to said land in the plaintiff. One of the deeds was executed on the 28th day of October, 1887, by John C. Rakes to the defendant Charles L. Blazer, and the other was made on the 13th day of January, 1888, by Charles L. Blazer and wife to the defendant Norman H. Brown. The mortgage was given by said Blazer and wife to the defendant Howard E. Schoeck on December 15, 1887. These instruments were duly recorded prior to the bringing of the suit.

In January, 1889, while the action was pending and undetermined, the plaintiff died, and the suit was revived in the name of Benjamin Albin, as administrator. Afterwards the heirs of John C. Rakes, deceased, by order of the court, were permitted to intervene and prosecute the suit in their own names.

There was a trial to the court, with findings and a decree in favor of the heirs.

The undisputed testimony shows that John C. Rakes had been the owner of the land in dispute for more than twenty years prior to the making of the conveyance to Blazer. In 1887 an agreement of some kind was entered into between Rakes and Blazer, whereby the latter set up a saw mill upon lands adjoining the quarter section in controversy, which Rakes claimed to own, for the purpose of manufacturing the timber thereon into lumber. It appears that Rakes had only an estate by the curtesy in the timber lands, and an action was commenced in the fall of 1887, in the district court of Cass county, by the owners of the legal title to the lands enjoining Rakes and Blazer from cutting the timber. Not long afterwards the 160 acres in

dispute was conveyed to Blazer, who at the time executed and delivered to Rakes the following writing:

" I, the undersigned, do hereby agree to deed to John C. Rakes, at any time he wishes, the following described property, to-wit: The northwest quarter ($\frac{1}{4}$) of section six (6), township ten (10) north, of range fourteen (14); and I furthermore agree that the said John C. Rakes shall have full control of said lands until his death.

" Witness my hand this 28th day of October, A. D. 1887.                                    C. L. BLAZER.

" In presence of
    " WILLETT POTTENGER."

The deed was executed at the home of Rakes, a few miles from Plattsmouth. The deed and the writing copied above were prepared by Blazer beforehand, the deed being signed as a witness by one W. O. Shields before it was presented to Rakes for execution. The only persons present when it was acknowledged were Rakes and Blazer and Mr. Pottenger, who, at Blazer's request, went with him from Plattsmouth for the purpose of taking the acknowledgment of Mr. Rakes. What conversation took place when the deed was executed does not appear. But two of the persons then present are now living, Blazer and Pottenger, and although both were witnesses on the trial, they failed to state a single word that was spoken while they were at Mr. Rakes's house. Mr. Pottenger, in his testimony, does say that no consideration was paid by Blazer at the time the deed was executed and delivered, and this is not disputed by any other evidence. There is no pretense that anything was subquently paid for the land, but it is contended by appellants that the consideration had been previously received by Mr. Rakes. There is in the bill of exceptions some testimony, if accepted as true, which would warrant such an inference.

The appellant Blazer testified substantially that he purchased of Rakes, in September, 1887, all the timber then

growing on certain lands claimed by Rakes, for the pur-
pose of cutting the same into lumber; that he paid Rakes
on the purchase $2,000 in money at the Staddleman House
in Plattsmouth about a week after the contract of pur-
chase was made; that he moved a saw mill on the timber
lands with which to saw the timber, but was prevented
from so doing on account of the injunction suit above re-
ferred to; that failing to get the timber, Blazer and Rakes
estimated the amount of lumber it would make, and took
the difference between the price Blazer was to pay for the
timber and what he had the lumber sold for as the amount
of his anticipated profits in the transaction, which Blazer
states amounted to over $4,000, and that the conveyance
of the land involved in this litigation was made in set-
tlement of the $2,000 previously advanced on the timber,
and the loss of anticipated profits sustained by Blazer by
reason of his failure to obtain the timber. No other wit-
ness testifies to the alleged transaction between the parties.
Blazer's testimony is very much weakened, if its force is
not entirely destroyed, by his answers to interrogatories
propounded on cross-examination.   He was unable to
satisfactorily state the sources from which he obtained the
$2,000 he claims to have paid to Rakes, besides it is estab-
lished by the testimony of creditable witnesses that Blazer
at the time was in straitened financial circumstances; that
he had borrowed several hundred dollars of a Plattsmouth
bank to invest in mill machinery, and for the payment of
the loan thus made, Rakes signed the note with Blazer as
security, which note remains unpaid, and has been pre-
sented as a debt against Rakes's estate.   Blazer testified
that he drew about $500 of the money he claims to have
paid to Rakes from the Bank of Commerce of Omaha.
This testimony is contradicted by the testimony of Frank
Barber, the balance book clerk of the bank at the time.
He testified that Blazer only drew from the bank in Sep-
tember, 1887, in which month it is claimed the $500 was

received, ten checks, aggregating $67.50, and after these were paid there was a balance of twenty-one cents in the bank to Blazer's credit.   The giving of the writing promising to reconvey the farm to Rakes on demand is entirely inconsistent with the idea that Blazer bought and paid for the property.   The agreement was not conditioned upon Rakes paying a sum of money.   Why did Blazer agree to reconvey upon the sole condition of a demand being made, if he was the absolute owner of the property?   There are many other circumstances appearing in the evidence which are against the position contended for by appellants, and we are not prepared to say that the court below was not warranted in rejecting the entire testimony of Blazer, and finding that the conveyance was without consideration. We think the findings, as to him, are justified by the evidence.   In reaching this conclusion we have not overlooked the testimony of the witness Walker, which it is claimed corroborates Blazer as to the payment of the money to Rakes.   He testified that he saw Blazer pay some money to Rakes at the Staddleman House, the amount he did not know, but there was some talk of $2,000.   Walker had never seen the person to whom he claims the money was paid prior to that time, nor since.   He describes the man as sixty or sixty-five years old, having dark whiskers on his chin, mixed with gray.   The testimony of persons who were well acquainted with Rakes in his lifetime is to the effect that he was nearly eighty years old, his whiskers and hair were very white, and that he wore no beard on the chin.   From which it could be inferred that the person Walker saw was not Rakes.   Such, doubtless, was the conclusion reached by the trial court, and with which we are content.

Again, under section 329 of the Code of Civil Procedure, Blazer was not a competent witness to testify to transactions had with Rakes, the deceased.   This section precludes a person having a direct legal interest in the result

of a cause, where the adverse party is the representative of a deceased person from testifying to any transaction or conversation had with such deceased person, unless the evidence of the deceased is read on the trial by the adverse party, in regard to such transaction or conversation, or unless such representative shall have introduced a witness who testified in regard to such transaction or conversation. The greater portion of the testimony of Blazer relates to an alleged transaction had between him and Rakes, and being received over the objections of the appellees, should not be considered in determining this appeal.

We will next consider the case as between the appellees and the appellants Schoeck and Brown. Blazer gave Schoeck a mortgage on the property for $350, but whether there was any consideration for the same, the record fails to disclose; nor was any evidence introduced by Schoeck tending to show that he was an innocent mortgagee without notice of the rights of Rakes.

As to the deed from Blazer to Brown, the evidence shows that the consideration for the same was certain real estate in Omaha conveyed by Brown to Blazer, subject to the incumbrances thereon. The testimony introduced by appellees tends to show that the Omaha property was at the time mortgaged for almost its full value, while the testimony offered on behalf of appellant Brown is to the effect that the value of the property, above the incumbrances, equaled the value of the farm received in exchange. After a careful examination of the testimony we have reached the conclusion that the preponderance of the evidence is not against appellees on the question of value, nor can Brown successfully maintain that he is an innocent purchaser of the farm without notice. He was a stranger to Blazer, never having met him until the day preceding the exchange. Brown never saw the land until after the deed was executed and delivered. He made the trade upon an abstract of title of the farm produced by Blazer, after consulting with Odell

Brothers, loan agents of Council Bluffs, by telephone as to the quality of the land. Rakes had been the owner of the land for many years. About ninety acres were in cultivation, and the entire 160 acres had been under fence, although prior to the conveyance it was destroyed, but many of the posts were yet in the ground, which indicated where the fence had been. There was no house or other buildings on the land. In 1887, and for previous years, it was cultivated by a tenant, who resided upon adjoining lands claimed by Rakes. The real estate in dispute was known and regarded by the neighbors as a part of the Rakes farm. Rakes at the time was residing upon adjoining lands. Blazer has never been in possession. We think the character of Rakes's possession was sufficient to impart constructive notice to Schoeck and Brown of his rights and interest in the property. (*Forey v. Bigelow*, 56 Ia., 383; *Booth v. Small*, 25 Id., 177; *Clement v. Perry*, 34 Id., 564.)

Counsel for appellant Brown, in the brief, call our attention to the testimony of one J. W. Foster, a real estate agent of Omaha, wherein he states that he visited the land in company with Blazer in December, 1877, with a view of trading some Iowa property for it, and while on the trip was introduced by Blazer to a man by the name of Rakes, of whom he inquired the value of the farm, who replied that he considered it worth $35 per acre, and that he had sold it to Blazer. From which it is claimed appellees are now estopped from asserting that Rakes had not parted with his title to the farm. We do not think such is the case. No estoppel is pleaded; nor is there any proof tending to show that the statement, which it is claimed Rakes made to Foster, was ever communicated to Brown. Hence it does not appear that the latter was in any way misled thereby. Moreover, the evidence is not conclusive that the person Foster was introduced to, and had the conversation with, was John C. Rakes.

It is insisted that the case was improperly revived in the name of the administrator.

Section 463 of the Code provides that "Upon the death of the plaintiff in an action it may be revived in the names of his representatives, to whom his right has passed. Where his right has passed to his personal representative, the revivor shall be in his name; where it has passed to his heirs or devisees, who could support the action if brought anew, the revivor may be in their names."

To whom did the right of action pass? There can be no doubt that on the death of John C. Rakes his lands descended immediately to his heirs, subject to the right of his administrator to the possession thereof, and to the rents and profits arising therefrom during the settlement of the estate, and subject further to the power of the administrator to sell the real estate to pay the debts of the decedent in case the personal property is insufficient for that purpose. We suppose an action like this may be revived in the name of the personal representative of a deceased plaintiff, where the real estate is needed for the payment of debts against the estate. In the present case no such claim is set up in the petition of the administrator to revive the action. He therefore failed to show that he was entitled to have the case revived in his name. We are unable to see how the appellants were prejudiced by the revival in the name of the administrator, as no decree was rendered in his favor, but in favor of the heirs of John C. Rakes, deceased. The real estate having descended to the heirs at law, the right of John C. Rakes, on his death, passed to them and they had the legal right to have the action revived and continued in their names. It appears from the record that the heirs were permitted, without objection, to file a petition and prosecute the suit in their own names. Their admission as parties plaintiff, by order of the court, without complaint from any one, was, in effect, a revivor of the action in the names of the heirs by consent of parties. No

objection was raised to their prosecuting the suit until after the cause reached this court. True, no conditional order of revivor in the names of the heirs was made by the district court. But the mode provided by title 13 of the Civil Code, for reviving actions by conditional order, is not exclusive. Section 45 of this Code provides, among other things, that "in case of the death, or other disability, of the party, the court may allow the action to continue by or against his representative or successor in interest." It has been held that the proper practice to revive an action under this section is by filing supplemental pleadings, and the service of summons, as in the commencement of an action. (*Fox v. Abbott,* 12 Neb., 333; *Carter v. Jennings,* 24 O. St., 182.) In this case no summons was necessary, as all the parties voluntarily appeared. The decree of the district court is

AFFIRMED.

THE other judges concur.