## Power, et al. v. Power, et al.

(Decided October 18, 1921.)

### Appeal from Magoffin Circuit Court.

1. Deeds—Mental Incapacity and Undue Influence—Sufficiency of Evidence.—In a suit by plaintiff children and grandchildren to cancel a deed of their father and grandfather to one of his sons, on the ground of mental incapacity and undue influence, evidence held to warrant judgment for defendant.

2. Deeds—Conveyance Between Persons in Confidential Relation—Burden of Proof.—Where an aged and infirm man conveys all of his property to his son, who is the dominant character in the household, to the exclusion of his other children, for a past consideration for which the son had already received other property, and for a future consideration much less than the value of the land, the law looks with suspicion on the transaction and places on the grantee the burden of showing not only the fairness of the transaction, but that it was the free and voluntary act of a capable mind.

3. Appeal and Error—Deeds—Mental Incapacity and Undue Influence—Finding of Chancellor.—In an action by plaintiff children and grandchildren to set aside the deed of their father and grandfather to one of his sons, on the ground of mental incapacity and undue influence, evidence held to sustain the chancellor's finding in favor of plaintiffs.

CALLOWAY HOWARD and A. F. BIRD for appellants.

W. R. PRATER and AUGUSTUS ARNETT for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming on original and cross appeals.

Sanford R. Power was the owner of a farm in Magoffin county. On April 6, 1907, he and his wife, Cynthia, conveyed about half the land to their son, Will Press Power. The recited consideration was $300.00 cash, and the deed was not to take effect until the death of the grantors. On November 21, 1908, a similar deed to the remainder of the farm was executed by Sanford R. Power and wife to their son, George N. Power. On November 28, 1908, George N. Power conveyed to Will Press Power an undivided half interest in the tract conveyed to him by his father. On July 15, 1911, Will Press Power conveyed to George N. Power an undivided half interest in the tract of land conveyed to him by his father. As a result of these conveyances Will Press Power and George

N. Power became the joint owners of the entire farm. On December 25, 1914, George N. Power died intestate, unmarried and without heirs. On December 30, 1914, Sanford R. Power and his wife, Cynthia, conveyed the land which they had inherited from their son, George N. Power, to their son, Will Press Power. The consideration was love and affection "and the further consideration of the payment of $48.70 to J. M. Atkinson and Company by George N. Power and the said W. P. Power judgment in the Salyersville police court Feb. 1st, 1901, as per receipt, and the further consideration of $50.00 paid by the said W. P. Power to Minnie Trusty Jan. 4th, 1909, $75.00 paid to Emily Craft on or about the 12th day of October, 1909, and $75.00 paid to John D. Power on or about the 10th day of October, 1904, $75.00 paid to Sarah Power December 12th, 1904, $75.00 paid by G. N. Power to Frank Power on the 18th day of Feb. 1908, and the further consideration that the said W. P. Power is to pay Laverie McNew $75.00, less the amount heretofore paid to her by George N. Power on or before Jan. 1st, 1916, without interest, and $75.00 to Myrtle Power on or before Jan. 1st, 1918, without interest, and $75.00 to Nannie Power on or before Jan. 1st, 1919, without interest, less $36.00 paid to her by George N. Power April 12th, 1912, as per her receipt and the further consideration that the said George N. Power and W. P. Power have paid the annual tax on said land for several years last past and have aided and assisted both by labor and money in running the farm for first parties for several years last past, and the further consideration of $86.68 paid by the said W. P. Power for doctor's bills, burial expenses and money furnished for G. N. Power and other true and valuable considerations, the receipt of which is hereby acknowledged.''

On August 31, 1916, J. Frank Power and others, the children and heirs of Sanford R. Power, brought suit against Will Press Power to cancel the deed executed to him by his father and mother on December 30, 1914. The grounds relied on were mental incapacity and undue influence. Some time later, the same parties instituted another action against their brother, Will Press Power, to set aside the deed executed to him by Sanford R. Power and wife on April 6, 1907. The two cases were consolidated, and on final hearing the deed of December 30, 1914, was set aside, while the petition seeking to cancel the

deed of April 6, 1907, was dismissed. Will Press Power appeals, and the plaintiffs prosecute a cross appeal.

At the time Sanford R. Power executed the deeds to his two sons, Will Press Power and George N. Power, in the years 1907 and 1908, he had ten children. The $300.00 consideration mentioned in each deed was not paid at the time the conveyance was made, but the eight other children of the grantor were to receive $75.00 each, each of the grantees paying these sums to four of the children. Defendant further claimed that it was a part of the consideration that he and George should support their father and mother, and that they performed this obligation by either working on the farm themselves, or paying others to do the work, and by paying grocery bills amounting to $300.00 or $400.00. The defendant had paid the sums due by him, but George had not discharged all of his obligations at the time of his death. His father, defendant says, asked defendant if he would not take the land and discharge George's obligations, and this he consented to do. The proposition was made by his father without any solicitation on his part. The deed was drawn and explained to his father and was then signed and acknowledged. His mother testified that she never suggested the making of the deed of 1914 to her husband, but that her husband proposed to make the deed because Will Press had borne the burden of their support, and because the other children had agreed to accept $75.00 apiece as a proper division of the land. The notary public and others who were present when the deed of 1914 was executed say that Sanford Power's mind was all right, and that he knew and understood exactly what he was doing. Many other witnesses say that his mental capacity was good, even up to the time of his death. On the other hand, about forty witnesses testified that during the last few years of his life Sanford R. Power was not only feeble in body, but did not have sufficient mental capacity to transact business or to understand the nature and effect of a deed. Some of these witnesses detailed certain circumstances which, if true, would tend to sustain their opinion. There was also testimony to the effect that Cynthia Power and Will Press Power were the dominant characters in the household and exercised great influence over Sanford R. Power.

There was no substantial evidence of mental incapacity on the part of Sanford R. Power when the deed of 1907 was executed. It appears that the deeds then made

by the grantor to his two sons were made for the purpose of dividing his land among his children, and that this arrangement was acquiesced in by the children. Furthermore, the land at that time was of little value, and considering the evidence as a whole, we perceive no reason why the judgment of the chancellor refusing to set aside the deed of 1907 should not be sustained.

When we come to the deed of 1914, a different situation is presented. Will Press Power had already received his half of the land in consideration of his promise to pay four of his brothers and sisters $75.00 each and to support his father and mother, and there was no particular reason why he should receive the other half of the land for making the payments and performing the services which he had already made and performed. Furthermore, the land had increased in value, and half of it was worth much more than the future obligations which Will Press Power assumed by the deed. No doubt any one of the other children would have been glad to take the land and discharge those obligations. The case is one where a confidential relation existed between the parties, and, clearly, where an aged and infirm man conveys all of his property to his son, who is the dominant character in the household, to the exclusion of his other children, for a past consideration for which the son had received other property, and for a future consideration much less than the value of the land conveyed, the law looks with suspicion on the transaction and places on the grantee the burden of showing not only the fairness of the transaction, but that it was a free and voluntary act of a capable mind. Davidson v. Davidson, 180 Ky. 190, 202 S. W. 493. Here, the grantor was seventy-eight or seventy-nine years of age. By the death of his son, George, he inherited the land in question. George's death took place on December 25th. Only five days later the father made the conveyance to Will Press Power. There is substantial evidence of mental incapacity at the time. While there is some evidence to the contrary, as well as to the effect that the execution of the deed was the free and voluntary act of the grantor, we are not prepared to say that the chancellor erred in holding that this evidence was insufficient to overcome the burden which the law imposed on the grantee.

Judgment affirmed both on the original and cross appeals.