CATHERINE DOUGHERTY ET AL., APPELLANTS, V. A. L. WHITE, APPELLEE.

FILED NOVEMBER 20, 1924.  No. 22922.

1.  **Homestead.**  The homestead character of the family home, title to which is in the husband. is not divested because the wife obtains a divorce and, with the children, removes from the home, while the divorced husband alone continues to occupy the property as a homestead.

2.  ———:  ABANDONMENT.  A divorced husband, living alone in the former family home, which was exempt as a homestead, rented a part thereof and, becoming ill, left the home and went to that of a neighbor, where he could have proper care and attention, and there remained for three or four months, until his illness terminated in death.  *Held*, that such circumstances do not show abandonment of the homestead.

3.  ———:  DESCENT.  If a divorced husband dies possessed of a homestead, which was selected from his separate property, it vests on his death in his heirs or devisees. and is not subject to the payment of any debt or liability contracted by or existing against him previous to or at the time of his death. except such as exists or has been created under the provisions of the homestead law.

4.  **Judgment:**  REVIEW.  On the death of a judgment debtor, the judgment should be revived against the representatives of the decedent whose property rights would be affected by the revivor. If the revived judgment would affect only personal property in the hands of the executor or administrator, the revivor may be against him alone, but if intended to be a lien on or affect title

to real property, which on his death passed to his heirs or devisees, then it should be revived against the heirs or devisees.

5. **Execution: REVIVOR.** After the death of a judgment debtor, an execution cannot be lawfully issued and levied on the real estate, of which he died seised, until the judgment has been revived against the persons who took title to the real estate either by operation of law· or as devisees.

6. **Quieting Title: OCCUPYING CLAIMANTS: IMPROVEMENTS.** An occupying claimant of land who, while in possession thereof under *bona fide* claim of title, places improvements thereon is entitled, on surrender of the premises to the rightful owner, to be reimbursed to the extent that his improvements have enhanced the value of the land.

7. ———: ———: **REIMBURSEMENT.** An occupying claimant of land who, while in possession thereof under *bona fide* claim of title, discharges and pays existing liens and taxes thereon is entitled, on surrender of the lands to the rightful owner, to be reimbursed for the amount of liens and taxes so paid, together with interest from the time of their payment.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Reversed, with directions.*

*Kingsbury & Hendrickson,* for appellants.

*W. V. Steuteville,* and *J. J. McCarthy, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, GOOD and THOMPSON, JJ.

GOOD, J.

This is an action to quiet title to a quarter section of land in Dakota county and for an accounting for rents and profits.

Plaintiffs are the children of Bernard Mahon, who died intestate in 1903, owning the land in question. The land was sold in January, 1904, under an execution on a judgment obtained against Mahon in his lifetime, and which after his death was revived as against his administrator before the execution issued. Defendant claims to be the owner of the land by mesne conveyances from the purchaser at the execution sale. Plaintiffs claim that the exe-

cution sale was void, first, because the judgment was never revived against them as the heirs of Mahon; second, because the judgment was dormant, no execution having been issued for more than five years after its rendition; and, third, because the land was a homestead and not subject to sale on execution. Defendant asserts that the revival of the judgment against the administrator was all that the law required, and that, the execution having been issued within five years after the revivor as against the administrator, the judgment was not dormant, and charges that Mahon in his lifetime had abandoned his homestead and that the sale under the execution vested a good title in the purchaser. A trial of the issues resulted in a decree for defendant. Plaintiffs appeal.

We will first consider whether the land was, in fact, a homestead at the time the execution issued. The record discloses that Mahon, with his wife and children, had resided upon the farm as their homestead for many years. In 1903 Mahon's wife obtained a divorce and was awarded the custody of the children and a judgment for $2,800 alimony. Prior to the decree she, with her children, had left the home and was residing with her parents. After the decree was entered Mahon continued to reside on the land for some time, when he became ill and went to the home of a neighbor, where he died some three or four months later. Previous to his removal, he had rented a part of the farm, but retained the buildings and lived thereon. When he went to the neighbor's home because of his illness, he left in the house and on the farm his personalty, and, some time after he left, the personal property, or at least the live stock and some of the other personal property, was removed from the premises; by whom or at whose direction is not disclosed. There is nothing in the record to indicate whether Mahon, when he went to the neighbor's home while ill, intended to abandon the homestead, or whether he intended to return. We have the bare fact that he was ill and perhaps knew that he was in a critical condition and was not likely to live long, and while in this condition he went to

the neighbor's home where he could have proper care and attention.

Do these facts show an abandonment of the homestead? It has always been the policy of this court, as well as of courts generally, to give a liberal construction to the homestead law for the purpose of protecting and preserving the home for those who would be benefited by its provisions. The law is settled that, where a husband and wife reside upon a homestead and the wife dies, the homestead character of the land continues and the surviving husband, although he may have no children or dependents residing with him, may still retain the homestead as such. *Palmer v. Sawyer*, 74 Neb. 108; *Dorrington v. Myers*, 11 Neb. 388; *Galligher v. Smiley*, 28 Neb. 189. The same rule obtains where the marriage relation has been dissolved by decree of court.

In this case, although the marital relation was dissolved, the husband was still liable for the support of his minor children. He was still, in law, the head of a family and was entitled to claim a homestead right, and that right continued until his death unless, by his voluntary act, he abandoned the homestead. Mahon had no other real estate which he could claim as his home. There is nothing in the record to indicate that it was his purpose to abandon his homestead. The fact that, when ill and with no one to care for him at his home, Mahon sought another place where he could have care does not evince a purpose to abandon the homestead. Suppose that Mahon, instead of going to a neighbor, had gone to a hospital for medical care and treatment. Would it be seriously urged that such an act on his part would work an abandonment of his homestead? It would certainly be a very harsh rule that would so hold and would not be in keeping with the legislative purpose as interpreted by judicial opinion. In our opinion, he did not abandon his homestead. Our statute provides:

" If the homestead was selected from the separate property of either husband or wife, it vests on the death of the person from whose property it was selected, in the survivor,

for life, and afterwards in decedent's heirs forever, subject to the power of the decedent to dispose of the same, except the life estate of the survivor, by will." Comp. St. 1922, sec. 2832.

The trial court seems to have adopted the view that because, at his death, Mahon left no spouse surviving, therefore the heirs could not take the homestead divested of any liens for the debts of the decedent. In this we think the court erred. It would be a strange rule that where the husband died, leaving a wife surviving, she could take the property for her lifetime and then his heirs would take it, absolutely free from debt, and, because he left no spouse surviving, they would be cut off from any right to the homestead. Such is not the intention of the statute. The children of Bernard Mahon, on his death, succeeded to his homestead right in the premises.

It appears from the record that the judgment on which the execution sale was had was rendered on July 21, 1898, before a justice of the peace, and on March 1, 1899, a transcript thereof was filed in the office of the clerk of the district court. On November 10, 1903, the judgment was revived as against the administrator of Mahon, and notice of the revivor proceedings was not given to the plaintiffs, who are the children and heirs of Mahon.

Section 8981, Comp. St. 1922, provides: "If either or both the parties die after judgment, and before satisfaction thereof, their representatives, real or personal, or both, as the case may require, may be made parties to the same, in the same manner as is prescribed for reviving actions before judgment; and such judgment may be rendered and execution awarded as might or ought to be given or awarded against the representatives real or personal, or both, of such deceased party."

Section 8973, Comp. St. 1922, relating to the revival of actions before judgment, provides: " Upon the death of a defendant in an action, wherein the right, or any part thereof, survives against his personal representative, the revivor shall be against him; and it may also be against

the heirs or devisees of the defendant, or both, when the right of action, or any part thereof, survives against them."

The precise question here involved seems not to have been heretofore determined by this court, but there have been actions before this court in which there have been decisions bearing upon it. In *Urlau v. Ruhe*, 63 Neb. 883, it is held: " When a party to an appellate proceeding dies, and his interest in the litigation passes to his heirs, the heirs are necessary parties to the proceeding." That was an action for the foreclosure of a real estate mortgage where one of the mortgagors died before the litigation was terminated, and it was there determined that the heirs were necessary parties to the litigation, and that it should be revived as against them.

In *Vogt v. Binder*, 76 Neb. 361, it is held: " Proceedings to revive a judgment should not be had in the name of an administrator, except where the administrator has succeeded to the rights of the decedent."

And in *Rakes v. Brown*, 34 Neb. 304, it is held: " On the death of an intestate his lands immediately descend to his heirs subject to the right of possession by the administrator, pending administration, and to his power to sell the real estate to pay the debts of the estate, in case the personal property is insufficient for that purpose.

" Where, pending an action to set aside a deed to real estate, and to quiet title, the plaintiff dies intestate, the action may be revived and continued in the names of the heirs at law of such deceased person."

In *Currier v. Teske*, 98 Neb. 660, it is held: " In an action brought after her death to foreclose a mortgage given by the wife in her lifetime, the rights of her son and sole heir were not affected by the proceedings, since he was not made a party to the action." It is true that in these actions the question under consideration was the revival of judgments directly affecting real estate and did not relate to actions for a money judgment.

In 1 C. J. 232, sec. 489, it is said: " On the death of the owner of land pending a suit to enforce a lien thereon, the

suit should as a rule be revived or continued against his heirs or devisees, and not against his personal representatives." In 1 R. C. L. 26, sec. 18, it is said: " If the action involves real and personal property, it should be revived against both the personal representatives and the heirs." The rule is also similarly stated in 1 C. J. 232, sec. 491.

In *Erwin's Lessee v. Dundas,* 4 How. (U. S.) *58, *76, it is said: " This series of cases, coming down from the earliest history of the law on the subject, and the reasons assigned in support of them, necessarily lead to the result— and which has also been confirmed by express decision in all courts where the authority of the common law prevails —that an execution issued and bearing *teste* after the death of the defendant is irregular and void, and cannot be enforced either against the real or personal property of the defendant, until the judgment is revived against the heirs or devisees in the one case, or personal representatives in the other."

In *Mitchell v. St. Maxent's Lessee,* 4 Wall. (U. S.) 237, 242, it is said: " The writ of *fieri facias* on which Mitchell rests his title, was tested after the death of St. Maxent; and, according to a familiar rule of the common law, it was therefore void. The death of a defendant, before the *teste* of an execution, compels the plaintiff to sue out a writ of *scire facias,* ' for the alteration of the person altereth the process.' The heirs, devisees, and terre-tenants of the deceased must have notice before an execution can regularly issue, for they are the parties in interest, and should have an opportunity to interpose a defense, if any they have, to the enforcement of the judgment."

In *Helm v. Darby's Adm'r,* 3 Dana (Ky.) *185, it is held that lands devised to an executor for the payment of the testator's debts are equitable assets which a creditor can reach only through the aid of a court of equity and are not subject to execution on a judgment against the executor.

We think a fair construction of our statute, above quoted, in view of the decisions of this and other courts, requires that the revivor should be against the representatives of

the deceased person whose property rights would be affected by the revivor. If the revivor would affect only the personal property in the hands of the administrator, then it may be revived as against him, but, if it is intended to affect real property which passed, on the death of the judgment debtor, to his heirs, then it should be revived against such heirs at law, and, if the judgment is to affect, or does affect, both personalty and real estate, then it should be revived against both the personal representatives and the heirs. In the instant case, the revivor was not against the heirs at law of Mahon, and yet it was the real property which descended to them that is sought to be affected and taken under the execution, and under a judgment to which they were not a party and of which they had no legal notice.

It necessarily follows that when the execution issued there was no judgment that was binding upon these plaintiffs, and the sale of their land on execution under the judgment was without warrant of law and absolutely void. Title, therefore, did not vest in the purchaser, nor could his grantee acquire a good title from him. The plaintiffs are entitled to have the title to the land quieted in them upon the conditions hereinafter stated.

Plaintiffs are also entitled to an accounting for rents and profits, except in so far as such claim may be barred by the statute of limitations, but, if it appears that the rental value has been increased or enhanced by reason of the improvements placed on the premises by defendant, then he should not be held for any part of the increased rental value caused by the improvements. Each plaintiff, who had attained the age of majority more than four years before the action was commenced, is limited to one-sixth of the rents and profits for a period, commencing four years before the action was begun and ending with the date of the decree to be hereinafter entered; and each plaintiff, who has attained majority since a date four years ante-dating the commencement of the action, is entitled to recover one-sixth of the rental value of the premises for the entire period during which defendant has been in actual possession.

Defendant went into possession under a deed claiming as owner, and is in the position of an occupying claimant. During the period of his possession he has improved the premises by the erection of a house, barn, fences, windmill and well, and has paid and he or his predecessors in title have discharged certain liens, namely, a mortgage and a judgment for alimony, the latter being a lien on the land, notwithstanding that it was a homesteaa. *Best v. Zutavern*, 53 Neb. 604; *Fraaman v. Fraaman*, 64 Neb. 472; *Miller v. Miller*, 101 Neb. 405. Under these circumstances, the defendant is entitled to be reimbursed for the items of taxes and liens discharged in the full amount thereof, together with interest at 7 per cent. upon each item from the date it was paid. Defendant is also entitled to be reimbursed for the improvements placed upon the premises to the amount that such improvements enhance the value of the real estate at the time decree shall be entered. Should the amount for which defendant is entitled to be reimbursed exceed the amount for which he is liable for rents and profits, then title should be quieted in plaintiffs, on condition of their paying to defendant such excess.

The judgment of the district court is reversed and the cause remanded, with directions to permit the taking of additional testimony, if desired; to take into account the rents and profits and the payment and discharge of taxes and liens, together with the enhanced value of the premises by reason of improvements, and to enter a decree in accordance with the views herein expressed.

REVERSED.

Note—See Abatement and Revival, 1 C. J. secs. 489, 491; Executions, 23 C. J. sec. 146; Homesteads, 29 C. J. secs. 346, 359, 492 (1926 Ann.) ; Improvements, 31 C. J. sec. 51; Judgments, 34 C. J. sec. 1014—Quieting Title, 32 Cyc. p. 1383.