## Poynter, et al. v. Poynter.

### (Decided January 27, 1925.)

### Appeal from Pulaski Circuit Court.

1. Work and Labor—Services Performed by Child for Parent Presumed to be Gratuitous.—Services performed by child for parent in absence of express promise to pay therefor are presumed to be gratuitous, especially where they all lived in the father's home as one family.

2. Wills—Less Capacity Required to Make a Will than a Deed.—It requires less capacity to make a will than a deed.

3. Wills—Will and Deed Distinguished.—A will rests on no consideration and is of no effect until death of maker, while a deed is bargain between two and rests on a consideration and takes effect from its delivery.

4. Deeds—Grantee Held to have Procured Execution of Deed by Undue Influence, and on Inadequate Consideration.—Evidence held to show that grantee procured execution of a deed conveying his father's farm to him, and that, without his procurement, deed would not have been executed, and that transaction was not freely and voluntarily entered into, nor deed made on an adequate consideration.

5. Cancellation of Instruments—Allowances to be Made to Son on Setting Aside of Father's Deed of a Farm to Him Stated.—Where father's deed of a farm to son, with whom he lived on the farm, was set aside, son, in absence of express contract, was not entitled to anything for his services, and was not chargeable with any rent until father's death, but was chargeable with reasonable rent thereafter on farm in condition when deed was made, subject to credit for enhancement of property by reason of his improvements and taxes which he had paid.

6. Cancellation of Instruments—Son Entitled to Credit for Enchancement of Property by Improvements where Deed Set Aside.—Where father's deed of a farm to a son was set aside, son was entitled to credit for enhancement of property by reason of his improvements, value to be fixed as of date of judgment.

W. M. CATRON and M. L. JARVIS for appellants.

WILLIAM WADDLE and E. T. WESLEY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Henry Poynter died a resident of Pulaski county in 1921 at the age of eighty-seven years. He left surviving him a number of children. His wife had died some years before. This suit was brought by nine of his children on February 2, 1922, to set aside a deed executed by him to his youngest son, William Nelson Poynter, on May 1, 1919, on the ground that by reason of age and sickness the grantor was incompetent to make the deed and that it was obtained from him by William Nelson Poynter by undue influence. An answer was filed controverting the allegations of the petition. A large amount of proof was taken and on final hearing the circuit court dismissed the petition. The plaintiffs appeal.

The proof shows that Henry Poynter was a United States soldier in the civil war and as such drew a pension. The amount was originally twelve dollars a month but as he got older and more infirm it was increased, first to thirty dollars and later to fifty dollars a month. He owned a farm on which he lived containing one hundred acres, worth, according to the testimony, from three thou-

sand to five thousand dollars. As his children married they left the home until only the youngest child, William Nelson Poynter, was there. He married about twenty years ago and since then has lived there on the farm with his family. His mother died six or seven years after his marriage and since then he has lived there with his father. Both worked on the farm until the last five or six years of his father's life. After that his father was not able to do much. Nelson had his wife and four children there; his mother-in-law lived with them.

Dr. Price, who wrote the deed and took the acknowledgment to it, testifies in substance as follows:

"Nels come to my place and asked me to go and fix some papers. My recollection is he said that his father had got in the notion about fixing up something about the place and his property and it seems that he named about the will. Maybe he suggested that it would be better to make a deed than a will. That was Nels' suggestion not Henry's. I went to Henry Poynter's house with Nels; when we got there Henry was there in the house sitting by the fire. Nelson was present when the deed was written. I don't remember whether it was before or after the deed was written or if it was before I told him or after. I read the deed to him and asked him if that was what he wanted and he said, 'I don't know, you all know more about it than I do.' I did not talk to him very much; he would not say very much; he would just say 'yes' or 'no' and 'I don't know.' I did not think his mind was entirely normal. I would not consider him crazy. I don't think I talked to Henry about the way the deed should be made or anything like that. My best recollection is that most of the talk was between Nels and myself."

The deed contains, among other things, these words: "And the further consideration that the party of the second part is to have no interest or part in any other property of my estate left at my death." Being asked how these words came to be put in the deed he said:

"I think we talked it over. I don't know now whether Henry had anything to say about it or not. My recollection is that Nels said if the place was deeded to him he did not want any of the property and I suppose I put that word in myself from my

understanding of that. When he come for me to write the deed we talked something about it and I remember of remarking to him, 'I am afraid you have waited too long until the deed will be no account,' and he said, 'If you think it would not we will have to let it go.' I don't think he told me that uncle Henry had sent for me. When I got there Henry did not tell me what he wanted me to do. He did not tell me he wanted to deed the place to Nels.''

The testimony of Dr. Price is confirmed by the testimony of G. W. Acker, who was there when the deed was written although he was not in the room all the time. Their testimony is contradicted by Nels Poynter and some members of his family, but they are wholly disinterested and are confirmed by the circumstances.

While the testimony is very conflicting, these facts are shown by the preponderance of the evidence. The old man was very frugal in his habits and did not waste money; he was on good terms with all of his children and they were on good terms with him. He had often declared his purpose to leave his property to all of his children equally. About six years before he had been taken to the sanitarium at Somerset, but they could not keep him there because he would not stay in his room and they did not think his mind was right.

While Nels and his family had been kind and attentive to him, they had enjoyed the use of the property and the pension money had been used in the family. The old man had more than once refused to make such a conveyance. The only consideration for the conveyance, as recited in it, was the fact that Nels had provided for him and agreed to take care of him the rest of his life and pay the burial expenses. In view of all the facts it would seem reasonable that Nels had received from his father, in the use of the place and property, full compensation for all that he had done and no previous promise by the father to pay Nels is shown. Such services as Nels performed for his father, in the absence of an express promise to pay therefor, are presumed to be gratuitous, especially where they all lived in the father's home as one family. The facts of the case bring it literally within the rule which has often been laid down by this court.

''The law looks with suspicion upon transactions between persons sustaining confidential relation toward each other, and if the grantor is old and

physically infirm, and transfers his property to one sustaining such confidential relation, and who has custody of or resides with him, the burden is cast upon the grantee to show that the transaction was freely and voluntarily entered into, and devoid of any vice rendering it inequitable or unfair.'' Davidson v. Davidson, 180 Ky. 193; Power v. Power, 192 Ky. 561, and cases cited.

On June 17, 1919, Henry Poynter made his will by which he devised all his personal property to Nelson Poynter, which amounted to about $1,500.00. Appellants contested the will. On a trial before a jury there was a majority verdict in favor of the will, upon which judgment was entered and no appeal was taken. This fact seems to have had much influence upon the decision of this case in the circuit court. But the facts as to the execution of the will were entirely different. It was shown in that case that he telephoned Dr. Garner to come and write the will and Dr. Garner testifies that he told him what he wanted to be in the will and why he wanted the will made. The facts were that some of the children learning about the deed made on May 1st, went up to the county seat and had a warrant issued for an inquiry into the sanity of their father. They also had a doctor to come and examine him. This angered him very much and he called Dr. Garner himself and had the will written. The warrant was afterwards not prosecuted. It appeared that Nelson Poynter was not present when the will was written and did not procure it to be written. The question of its validity is not before the court on this appeal, but the fact that the will was sustained is no reason why the deed made under different circumstances on another occasion should be sustained. It requires less capacity to make a will than a deed. Wise v. Foote, 81 Ky. 10. A will rests on no consideration and is of no effect until the death of the maker. A deed is a bargain between two; it rests on a consideration and takes effect from its delivery. It then vests the title in the grantee. The only reasonable conclusion upon all the evidence is that Nelson Poynter procured the execution of the deed and without this it would not have been executed. The grantor was old and infirm; the deed transferred the property to Nelson, who had the custody of him and resided with him. The evidence does not show that the transaction was freely and voluntarily entered into or

upon an adequate consideration and the deed should be set aside.

No express contract appearing by which Henry Poynter agreed to pay Nelson Poynter for his services, no implied contract arises and he should not be allowed anything for his services to his father upon the setting aside of the deed. He should not be charged with any rent on the place until the death of his father, but he should pay a reasonable rent from that time on it in the condition it was in when the deed was made. He should be credited by the amount of the enhancement of the property by reason of his improvements, the value to be fixed as of the date of the judgment. He should also be credited by taxes he has paid. He should be adjudged a lien on the land for the balance due him, if any.

Judgment reversed and cause remanded for a judgment as above indicated.