59 N.J. Super. 78 (1959)
157 A.2d 146
DAVID J. HEIM AND HILLBROOK ACRES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFFS,
v.
ANNA SHORE, SIDNEY SHORE, GERTRUDE R. SALTZMAN AND RAYMOND SALTZMAN, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 29, 1959.
*79 Mr. John B. Mathews (Messrs. Mathews & Sitzler, attorneys), for plaintiffs.
Mr. Raymond Saltzman, attorney for defendants (Mr. George P. Walker of counsel).
WICK, J.S.C.
This action concerns an alleged oral agreement for the sale of lands. It was fixed by the pretrial order in several counts: specific performance or damages, rescission and reformation or damages, and damages for unjust enrichment. This court granted defendants' motion *80 to dismiss at the end of plaintiffs' case. The dismissal was affirmed on appeal except as to the issue of unjust enrichment. Heim v. Shore, 56 N.J. Super. 62 (App. Div. 1959).
Defendants have now presented their case. The defendant, Gertrude R. Saltzman, has denied in detail the various assertions by plaintiffs' witnesses that she had made an oral agreement or understanding with plaintiff Heim to convey the balance of the tract, and the assertions that she knew of and acquiesced in the construction. She testified that she did not learn of the construction of the two houses until October 24, 1956; that then she asked Heim what it meant; that he said he was in need of money and thought he could do business with her on more lots; that she told him to stop construction immediately. She testified that the first time she ever discussed the sale of the balance of the tract with defendants was at her office in December 1956, that no agreement was reached, and that defendants decided that they did not have sufficient funds to engage in further construction. Her testimony, which was completely credible, leads this court to the conclusion that there was never an oral understanding between Mrs. Saltzman and Heim and that she never, with knowledge of the construction, permitted it to be continued.
Even if there was an oral understanding or acquiescence, it does not appear that there would be any unjust enrichment here. To constitute such, there would have to be an enhancement in the value of the land. Damages in this situation are not judged by the value of the efforts and expenditures incurred by the plaintiff. It must be further found that such are a benefit to defendant. Heim v. Shore, 56 N.J. Super. 62, 75 (App. Div. 1959). In Meyers v. Canutt, 242 Iowa 692, 46 N.W.2d 72, 24 A.L.R.2d 1 (Sup. Ct. 1951), enhancement in value exceeded the cost of improvements, and the plaintiff was limited to cost. The court also cites an earlier case where cost exceeded enhancement and recovery was limited to enhancement. Iowa, then, takes the position that enhancement is not the rule, but *81 whichever is less is the measure of recovery. Of course, this rule would give the same result in the present case. However, this would not appear to be the rule adopted by the Appellate Division in our case, since the court said that the plaintiff is entitled at least "to the amount by which the market value of the lands is increased as a result of the improvements," citing Restatement, Restitution, sec. 40, comment (f), p. 161, and sec. 155, pp. 614-15. Section 40, comment (f) states:
"In accordance with the rule stated in Sec. 155, where a person rendering the services is alone at fault in causing the mistake, as well as where both parties are either faultless or equally at fault, restitution is limited to what the services are reasonably worth in view of the purposes of the recipient. If, however, the recipient of the services is more at fault than the giver, the measure of the restitution may be the reasonable value of the services rendered, irrespective of the value to the recipient (see Sec. 152 and Sec. 155)."
The "at least" qualification made by the court would refer to the situation where the recipient is more at fault, which is not the position taken here. The section 152 referred to deals with fraud, undue influence, and duress. In such situations "the measure of recovery for the benefit received by the other is the market value of such services irrespective of their benefit to the recipient." Section 155, pp. 614-15, is consistent with the above situations and deals with the situation where there is a voidable employment contract.
The court also speaks of the situation of an unenforceable agreement stating "the defendants have a duty to pay for whatever value they have received from plaintiffs' partial performance, regardless of * * * lack of good faith in permitting the services to be rendered [Citations]" 56 N.J. Super. 75. The citation to Williston is not helpful as it deals with employment contracts which is certainly not the case here. The citations to the A.L.R. and C.J.S. present the same difficulty. They obviously are not relevant here as the defendants never promised, nor did plaintiffs ever *82 expect, to be paid for their services. At any rate, the statement by the court seems to emphasize the value to defendants and not cost to plaintiffs.
The time when the valuation of the improvement is to be made is when the defendants acquired the use of them, for until then they would be of no benefit to defendants. Young v. Com'rs of Mahoning County, 53 F. 895 (Cir. Ct. 1892); Poynter v. Poynter, 206 Ky. 836, 268 S.W. 582 (Ct. App. 1925); McKenzie v. A.P. Cook Co., 113 Mich. 452, 71 N.W. 868 (Sup. Ct. 1897); Dougherty v. White, 112 Neb. 675, 200 N.W. 884, 36 A.L.R. 425 (Sup. Ct. 1924); Pritchard v. Williams, 181 N.C. 46, 106 S.E. 144 (Sup. Ct. 1921); Howard v. Kirton, 144 S.C. 89, 142 S.E. 39 (Sup. Ct. 1928). These cases are collected in Annotation, 24 A.L.R.2d 11, sec. 17. Others are found there for the same proposition; assessment should be made when the owner of the land acquires the improvements. Others are found which indicate that, as a practical matter, assessment will be made of their present worth, that is, at the time of trial. There are three others noted in which the commencement of the action was chosen as the time. One case is cited and quoted in which it was held error to make valuation as of the time of trial. Two others are cited in which valuation was made as of a time before commencement of the action; one where the owner entered and occupied, the other where a vendee repudiated his contract and surrendered possession. In one case the valuation was made 12 years after commencement of the action when the litigation was finally terminated.
Although the cases cited would not be authority necessarily for postponing the time until the litigation was finally concluded by an appeal no longer being available, it seems that their general philosophy is consistent with that position in this case. The tacit assumption in those cases is that as soon as the claimant is put into possession by the ejectment, he begins to derive benefit from the improvements. In our case it would seem inappropriate to decide the question *83 in terms of possession. Physical possession was actually never denied to defendants, but at the same time it was of no benefit to them as far as the improvements were concerned. Being vendors, the only benefit to them would be not possession of but sale of the improvements. This would not occur as long as defendants' right to possession of the property was in dispute. Defendants certainly could not deal freely with their property while the plaintiffs were maintaining that they had the right to conveyance of it. Until the claim for specific performance by plaintiffs was concluded adversely to them, the defendants were not in a position to reap the benefit of any increase in the value of the property. Not until the time had elapsed to apply for certification to the Supreme Court from the decision in Heim v. Shore, 56 N.J. Super. 62 (App. Div. 1959), did the defendants finally become secure in their right to the property and the alleged improvements. This places the time for valuation at June 12, 1959.
Possibly both the measure of damages and the time of their valuation would be different if fraud were present or defendants were more at fault. No element of fraud appears in this case, even when regarded solely from the state of facts as portrayed by plaintiffs. Nowhere does it appear that defendant Mrs. Saltzman led plaintiffs into the oral understanding or agreement to work something out with the intention to repudiate it later. The most that can be said of her alleged repudiation is that she became disillusioned with plaintiffs' ability to finance the purchase and decided not to pursue the matter any further. It is undisputed that at the meeting between Mrs. Saltzman and the plaintiffs in December 1956, the latter decided that they did not have sufficient funds or financing to embark upon the purchase and development of the property. Although plaintiffs allege that they made several demands for conveyance of the property, they do not pinpoint any such demand, or demonstrate that they ever made a tender of the purchase price or satisfied Mrs. Saltzman as to their ability to obtain financing. The *84 plaintiffs were not entirely consistent in their position as to when the alleged conveyance was to take place, but they primarily contend that it was to be on January 1, 1957. Without a showing by plaintiffs of a demand for and an ability to accept conveyance by that time, it cannot even be said that defendant Mrs. Saltzman acted in bad faith, aside from any question of fraud. Certainly she would not be required to stand by and wait until plaintiffs were able to do business. The most that can be said is that there was a mutual collapse of the alleged venture and that Mrs. Saltzman was under no obligation to engage in further negotiations with plaintiffs.
The actual physical work done on the property consisted of the partial construction of two homes and some rough grading. One home was destroyed by fire on January 1, 1957, and it will be necessary to remove the debris. There is some dispute as to the degree of completion of the other home. Heim testified that the sides are sheathed and the roof partly on. Defendants' expert, Mr. Chalmers, testified that there was no roofing or siding. There is no dispute that the floors have warped and buckled and that the structure had, as of June 12, 1959, been open to the elements for about two and a half years. Mr. Chalmers stated that the cost of repairing the damage and finishing the house would equal the cost of building a new one. None of the defendants are, themselves, developers of land. They sell to developers. Any benefit to them must be found in an increased sales value. It is improbable that a prospective purchaser would be favorably impressed with the "improvements." He would not be willing to pay more for the land in its present state than in its "unimproved" state, as it would be obvious to him that the cost of making repairs and removing the debris would balance any potential value to be found in the rough grading and partially completed house. Furthermore, the present condition of the "improvements" would naturally impress the prospective buyer that the development of this tract had already proved unsuccessful once and might thereby *85 have a deleterious effect on the sales price. And still not considered is the fact that there was a change in the zoning of this tract in 1957. The minimum lot size was reduced from 100' x 200' to 100' x 150'. This fact, or simply the fact that the two "houses" might not be right for a prospective purchaser's lot plan, even at 100' x 200', or such purchaser's architectural scheme, might make it necessary for the buyer to remove the partially constructed house and grade over the two foundations. The probabilities thus are that the physical "improvements" have depressed rather than enhanced the selling value of this land.
The plaintiffs obtained engineering work showing test borings made of the entire tract. They obtained plans showing outbound and topographical surveys of it. They had subdivision plans made of it (these plans show 119 lots) and then, having received tentative F.H.A. approval, had further subdivision plans made incorporating the suggestions made by F.H.A. They procured conditional approval by the municipality of a 23-lot section and filed a map of it. They claim that these efforts have resulted in a substantial enhancement of the value of the tract, especially the 23-lot section which two of their expert witnesses testified have realized an increase in value of $500 per lot as a result of these efforts.
Leaving aside for a moment the 23-lot section, the plaintiffs are met with a fundamental difficulty as to the balance of the tract. None of the plans is in defendants' possession; nor are they available for use by defendant or a prospective purchaser and certainly their mere existence would not enhance the value of the land. Quite simply, no benefit has yet been conferred upon the defendants as a consequence of plaintiffs' efforts in this regard. This may seem somewhat technical; it may be said the defendants should have these plans and the resulting benefit to the land, if any, imposed upon them by this court in exchange for a money judgment against them. Although this might be appropriate were fraud present, it conflicts with the purpose of an action for *86 unjust enrichment based on improvements. Here we have landowners who have necessarily been put in possession of improvements made and, although they would be quite happy to be relieved of this possession, the court, in adjusting the equities between the parties, will make them pay for their value inasmuch as they were made innocently or in good faith and cannot be feasibly removed. The action, however, was never designed to impose unwanted improvements upon the landowners.
As indicated above, the plot plan of the 23-lot section has become a matter of public record and is thus available to either defendants or a prospective buyer. However, the defendant Mrs. Saltzman testified that she sold whole tracts and did not break them up. It would seem that a prospective buyer would have little use for a plan of 23 lots out of 119. He would want to see the plan of the whole to determine if the layout was satisfactory to him. The approval of 23 lots would have slight value to him as he would need approval of the whole. It is improbable that he would begin construction on the 23 lots hoping that the balance would be approved.
Again there is the zoning change. The plans of the whole and of the 23 lots are based on the 100' x 200' zoning. This does not mean that no prospective buyer would build according to such a layout, but whether or not he would is mere speculation and an award must be based on facts and probabilities, not mere speculation.
It is thus the opinion of this court that the plaintiffs never had an oral understanding with the defendants; that defendants never acquiesced in the construction, that plaintiffs' efforts resulted in no enhancement of the value of defendants' land.
Judgment will accordingly be entered in favor of the defendants with costs.