[Civ. No. 839.   Third Appellate District.—June 3, 1911.]

SADIE ZANONE, as Administratrix of Estate of CATH-
ARINE A. POWERS, Deceased, Appellant, v. JOHN
R. SPRAGUE, as Administrator of Estate of JANE M.
SPRAGUE, Deceased, and JOHN R. SPRAGUE, Her
Husband, Respondents.

Homestead—Selection from Separate Estate of Husband—Divorce
by Husband—Nonassignment to Wife—Termination of Rights.
Where a homestead was declared by a husband upon his separate
property for the benefit of himself and wife, and he subsequently
obtained a divorce from the wife, in which proceeding no order
was made assigning the homestead to the wife for a "limited
period," as provided in subdivision 4 of section 146 of the Civil
Code, her rights in the homestead were absolutely terminated upon
the entry of the final decree of divorce in favor of the husband.
If the wife's rights are not reserved in the decree, they are de-
stroyed forever.

Id.—Power of Court to Set Apart Homestead to "Innocent Party"
for "Limited Period" not Arbitrary.—The power of the court
to set apart the homestead to the "innocent party" for a "limited
period" in a divorce action, may not be exercised arbitrarily; but
must be exercised by the court reasonably, and according as the
facts of the case demand that it shall be applied; yet it must be
put into operation in behalf of the wife, if she would retain any
interest whatever in the homestead selected from the separate estate
of the husband.

Id.—Right of Wife must be Established by Decree or Contract.—
When a wife, after the divorce, seeks to assert any claim to any
part of the husband's property, homestead or otherwise, she must
establish that right by the decree, or by a valid contract between
herself and husband.

Id.—Silence of Decree—Presumption.—Where the decree is silent
as to the homestead, it is to be presumed that at the time of grant-

ing the divorce. it made no order with reference to the homestead, neither assigning it to the "former owner" of the property, nor to the wife "for a limited period."

ID.—DEFAULT OF WIFE IN DIVORCE SUIT.—Where the wife made no appearance in the divorce suit brought against her by her husband, and allowed the judgment to be entered upon her default, it may be assumed that the evidence must have disclosed that she was not entitled to consideration as one to whom the homestead should be assigned "for a limited period."

ID.—DECREE NOT NECESSARY TO REVEST TITLE IN HUSBAND.—The homestead having been selected from the husband's separate property, when the wife's interest therein terminated by the decree of divorce, no order of court was necessary to revest the whole interest in the divorced husband when the wife's interest therein had ceased, but the whole homestead ceased as to that family, and the property remained in the former owner, freed and unencumbered by any claim of the former wife.

ID.—DEVOLUTION OF HOMESTEAD BY DEATH OF SPOUSE—CONSTRUCTION OF CODE.—The devolution of a homestead by the death of a spouse, under section 1474 of the Code of Civil Procedure, can only apply when the relation of spouse exists at the date of the death, and cannot apply when the relation of spouses has been severed by divorce, and the death of a divorced husband can confer no right of devolution upon the divorced wife under that section of the code.

ID.—MEANING OF WORD "SURVIVOR" IN CODE.—The word "survivor," as used in section 1174 of the Civil Code, refers only to the surviving spouse, and not merely the surviving individual whose character as a spouse has been destroyed by a decree of divorce, during the life of the former husband now deceased.

ID.—"HUSBAND AND WIFE."—The words "husband and wife," as applied to domestic relations, each has but one meaning, viz., "a man who has a wife" and a "woman who has a husband," and cannot mean an unmarried man and an unmarried woman, or a divorced man and a divorced woman.

ID.—CONSTITUTIONAL LAW—ACT TO AMEND SECTIONS OF CIVIL CODE— RE-ENACTMENT OF ENTIRE CODE NOT REQUIRED.—Where an act to amend sections of the Civil Code properly re-enacts the entire sections as amended, that is a sufficient compliance with the provision of the constitution, which does not require that the whole Civil Code should be re-enacted in such case.

ID.—ACTION TO QUIET TITLE OF DIVORCED WIFE OF DECEASED—EVIDENCE —PROPER EXCLUSION OF DECLARATION OF HOMESTEAD—NONSUIT.— In an action by the administrator of the divorced wife of deceased, to quiet her title to the homestead as surviving spouse, the court

properly excluded the declaration of homestead in her favor, and granted a nonsuit as to defendants.

ID.—REMARRIAGE OF HUSBAND—HOMESTEAD NOT INURING TO SECOND WIFE.—Where the husband remarried, and the record shows no second homestead in favor of the second wife, the former homestead, as such, could not inure to her benefit.

ID.—INHERITANCE OF CHILD OF FORMER MARRIAGE.—A child of the former marriage would be entitled to her proper share according to the law of succession, as to the estate of which her father died seised.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Robert P. Troy, and Andrew Thorne, for Appellant.

W. H. Morrissy, for Respondents.

HART, J.—This is a suit to quiet title to certain real property situated in the city of San Francisco.

The court granted defendant's motion for a nonsuit and rendered and caused to be entered judgment accordingly. The appeal here is by the plaintiff from said judgment.

There is no dispute as to the important facts, which are: Alfred Coad and plaintiff's intestate, Catherine A. Powers, intermarried in the month of July, 1869.

The real estate in dispute was the separate property of said Alfred Coad, it having been devised to him by his father, Samuel Coad, prior to his said marriage to plaintiff's intestate.

On the sixth day of January, 1870, Alfred Coad filed with the county recorder of the city and county of San Francisco a declaration of homestead on said property. In the declaration so filed it was stated that the family of the declarant consisted of himself and wife (plaintiff's intestate), and that, at the time of the filing of said declaration, they were residing on the premises upon which the declaration of homestead was so filed.

On the fourteenth day of April, 1881, Alfred Coad was, by the superior court in and for the city and county of San Francisco, granted a decree of divorce from plaintiff's intes-

tate. On the twelfth day of October, 1890, Alfred Coad and Jane Mary Sprague, defendant's intestate, intermarried and remained husband and wife up to the time of said Coad's death, which occurred on the thirteenth day of April, 1906.

Coad and defendant's intestate, as husband and wife, resided on the premises in dispute at the time of his death.

Subsequently to the death of Coad, his widow married John R. Sprague, the marriage ceremony having been performed on the twenty-ninth day of September, 1907.

After the trial of this action, both Catherine A. Powers and Jane M. Sprague died intestate, and the plaintiff and the defendant were duly appointed administratrix and administrator, respectively, of the estates of the deceased women, and were thereupon substituted as parties plaintiff and defendant, respectively, to this action.

The claim of the plaintiff is that her intestate, Catherine A. Powers (mother of plaintiff by Alfred Coad), is the owner in fee of the premises in controversy by reason of the declaration of homestead filed thereon by Alfred Coad during their coverture (Code Civ. Proc., sec. 1474), said homestead never having been abandoned during the life of said Coad by the mode prescribed by law. (Civ. Code, sec. 1243.)

The contention of the defendant is: 1. That no valid homestead was ever declared and filed on the premises; 2. That, assuming that there was a homestead declared and filed on the premises according to the requirements of the law (Civ. Code, secs. 1263, 1264), the interest of Catherine Powers therein terminated with the decree dissolving the marriage relation between her and Coad.

The decree of divorce is absolutely silent as to the homestead or other property, and, manifestly, in such case, if either or both of the propositions contended for by the defendant are maintainable, Catherine Powers had no interest of whatsoever kind or nature in the property in dispute at the time of the commencement of this action.

We are of opinion that the second proposition urged by defendant, viz., that whatever interest in or rights under the purported homestead acquired by plaintiff's intestate were lost upon the entry of the decree granting Coad a divorce from her, is sound and must be sustained. It will, therefore, not be necessary to examine and decide the question

whether the attempt to impress the disputed property with the character of a homestead was successful or futile.

"The policy of homestead laws," says Waples, in his work on "Homestead and Exemption," page 29, "is the conservation of homes for the good of the state; the mischief to be prevented by those laws is the breaking up of families and homes to the general injury of society and of the state; the remedy provided is the exemption of occupied family homes from the hammer of the executioner," and, therefore, as to "homestead statutes, liberal construction is the rule so far as concerns exemptions." (Id.) In other words, homestead statutes are not designed to screen debtors or to protect them against the performance of their just obligations, but to provide for the conservation of homes in the interest of the general welfare and to that end to protect homes against the business misfortunes or the improvidence of heads of families. While homestead rights are purely creatures of the legislature, they are, nevertheless, as stated, to be given a liberal construction in order to fully effectuate their beneficent purposes. With this rule in view, we shall consider the respective contentions of the parties to this controversy.

As the property involved here is of the separate estate of Coad, it is manifest, as will be seen, that the only way by which plaintiff's intestate could have retained any interest in the homestead in question, after the divorce was granted, was by an assignment of said homestead to her by the court for a "limited period" at the time the decree granting the divorce was rendered and entered. (Civ. Code, sec. 146, subd. 4.) Said subdivision of said section provides that, upon the dissolution of the marriage by the decree of a court of competent jurisdiction, in case the homestead has been selected from the separate property of either, the same "shall be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the innocent party."

As we have seen, the decree of divorce is silent as to the homestead, and it is, therefore, to be presumed that the court, at the time of granting the divorce, made no order with reference to said homestead, having assigned it neither to the "former owner" of the property (Coad) nor to the wife "for a limited period." (*Brady* v. *Kreuger,* 8 S. D.

16 Cal. App.—22

464, [59 Am. St. Rep. 771, 775, 66 N. W. 1083].) Indeed, from the fact that Coad was the plaintiff in said action, and from the further fact that plaintiff's intestate made no appearance therein, but allowed the proofs to be heard and the judgment to be entered upon her default, it may be assumed that the evidence must have disclosed that she did not come within the description of the party, as set forth in that section, to whom a trial court is authorized, in such case, to assign a homestead carved out of the separate property of the other spouse "for a limited period." At any rate, it is very evident that the circumstances developed at the hearing of the suit for divorce were not, in the judgment of the court hearing said action, such as to justify an order awarding the homestead, "for a limited period," to plaintiff's intestate.

If, as we conceive to be the correct rule, the only interest which plaintiff's intestate could have in said homestead, after the divorce was granted, is limited to that interest which she might have acquired had the court found (and made an order accordingly) that the exigencies of the action for divorce warranted it in assigning said homestead to her for a "limited period," then, the court not having so found or made such assignment of the homestead, it seems to us that it of necessity follows that whatever rights she might have claimed under said homestead terminated, *ipso facto,* with the entry of the decree of divorce. Nor, since the homestead was selected from his separate property, was it necessary, in order to vest in Coad the whole of the homestead interest, that the court should have expressly and by its decree or otherwise assigned to him said homestead. The "family" for whose benefit the homestead was selected from the separate property of the husband having been destroyed by the decree of the court divorcing the parties, the homestead necessarily ceased to exist as to that family, and, the homestead not having been assigned to the wife at the time of the making and entry of the divorce decree, the property so impressed remained in its former owner freed from and unencumbered by any claim which the former wife might have had to it by reason of said homestead. (Waples on Homestead and Exemption, p. 67 et seq.; *Brady* v. *Kreuger,* 8 S. D. 464, [59 Am. St. Rep. 771, 66 N. W. 1083]; *Bahn* v. *Starcke,* 89 Tex. 203, [59 Am. St. Rep. 40, 34 S. W. 103].)

Of course, no one will gainsay the right or power of the
legislature to authorize the assignment of the homestead,
upon the granting of a divorce, to either spouse absolutely,
whether such homestead is carved out of the separate prop-
erty of either spouse or selected from the community.    But,
in this particular instance, the legislature of this state has
not so provided.    The right of the "innocent party" to an
action for divorce to the enjoyment of the homestead, selected
from the separate property of the other spouse, after a di-
vorce has been granted, is limited by the express language of
the statute, and, while the phrase, "for a limited period,"
may entitle the "innocent party" to the enjoyment or pos-
session or occupancy'of such homestead for a long period of
years, even perhaps during the life of such party, according
to the circumstances of the particular case (*Hutchinson* v.
*McNally,* 85 Cal. 619, [24 Pac. 1071]; *Neary* v. *Godfrey,*
102 Cal. 341, [36 Pac. 655]), it does not mean that the court
has the power of vesting the homestead absolutely in such
party, unless such party happens to be the "former owner"
of the property from which said homestead has been selected.

The rule that the homestead, where selected from the sep-
arate property of one of the spouses, terminates, upon the
granting of a divorce, in so far as are concerned the rights
therein of the spouse from whose separate estate it has not
been taken, unless such rights are preserved, as far as they
may be, by the decree, is recognized and applied in many
other jurisdictions, whose homestead laws vary only in im-
material particulars from ours.

In South Dakota the statute (Civ. Code, sec. 93; Comp.
Laws, sec. 2585) provides, among other things, that "the
court in rendering a decree of divorce, may assign the home-
stead to the innocent party, either absolutely or for a lim-
ited period, according to the facts in the case," etc.

It will be noted that the code section in that state goes far-
ther than subdivision 4 of section 146 of our code, for it is
there provided, generally and without any qualification as to
whether the property from which the homestead is selected
is of the separate estate of one of the spouses or of the com-
munity, that the court may, upon granting the divorce, assign
such homestead to "the innocent party," absolutely, if "the

facts in the case" warrant it. Here, as seen, the court has
no such power.

In *Brady* v. *Kreuger,* 8 S. D. 464, [59 Am. St. Rep. 771,
66 N. W. 1083], the decree of divorce made no disposition
of the homestead—in fact, it was absolutely silent upon that
subject—but it was, nevertheless, contended by the appellants
in that case that "after a divorce the wife retains her interest
in the homestead, and that, under the facts proven in this case,
she was entitled to retain possession of the premises occupied
by herself and husband at the time the divorce was granted."
The supreme court of South Dakota disposes of this propo-
sition adversely to the contention of the appellants as fol-
lows: "Appellants contend that this court will presume, in
the absence of evidence to the contrary, that the decree gave
her the right to retain possession of the homestead. But this
we cannot do. Courts will sometimes indulge presumptions
to support a judgment of a court, but never to reverse it.
In the absence, therefore, of any proof as to the contents
of the decree of divorce, we cannot presume it contained any-
thing favorable to the defendants. The relation of husband
and wife having terminated, the wife ceased to have any
claim upon or right in the husband's property, whether
homestead or otherwise, unless such rights were preserved
by the decree of the court. If the decree of the court pre-
served her rights to the homestead, or conferred upon her
any other privileges in, or interests in or to, the property of
the husband, the burden was upon her to establish such rights
by the decree, as she clearly would have no right to the pos-
session of the homestead after a decree of divorce had been
granted, unless saved by the decree. There being in this
state no right of dower, or other absolute claim of the wife
upon the property of the husband, except under the law of
succession, as his widow, or under a homestead claim which
exists in favor of a wife or widow, and which depends solely
upon the fact that she is such wife or widow, she can only
avail herself of these claims by showing that she occupies
either one or the other of these relations named to the hus-
band. As the wife, upon a dissolution of the marriage,
ceases to be the wife, and can never be the widow, of her
divorced husband, her claims upon his property, necessarily,
also cease and terminate upon the divorce. (*Rosholt* v.

*Mehus,* 3 N. D. 513, [57 N. W. 783, 23 L. R. A. 239].) It was undoubtedly for these reasons that the legislature of this state has conferred upon the courts in which a decree of divorce may be obtained such comprehensive powers for regulating and settling the rights of the wife in the property of the husband. (Comp. Laws, secs. 2581–2585.) The rights of the wife, therefore, in her husband's estate after a divorce is granted, are regulated and determined exclusively by the provisions of the decree of divorce, unless there is some valid contract between the husband and wife. When a wife, after the divorce, seeks to assert any claim to any part of the husband's property—homestead or otherwise—she must establish that right by the decree, or by a valid contract between herself and husband." ·

As in South Dakota and in many other states, so in California, the law has provided the courts with ample power, in cases where the marriage relation has been dissolved by a decree of divorce, to justly and equitably adjust homestead and other property rights as between the parties for whose benefit homesteads may be declared or created. But such power cannot be applied without regard to the facts of the case. The power of the court, for instance, under subdivision 4 of section 146 of the Civil Code, to assign the homestead, which has been selected from the separate property of one of the spouses, to the "innocent party" to the divorce action, may not be exercised arbitrarily. It is only where the circumstances of the case justly demand such assignment that the power should be invoked and applied. For illustration, it may be suggested, as some of the reasons which may interpose against the exercise of that power, that the "innocent party" may be found to have ample separate means for his or her own purposes, while the "former owner" of the property may have no other means than those represented by the homestead; or it may be that the community interest of such party may, under all the circumstances, be sufficient and just. Again, it may have transpired that the parties themselves have reached an amicable and satisfactory agreement by which they have apportioned their property rights without the necessity of disturbing or interfering with the "former owner's" absolute right to the possession and occupancy of his separate property from which the home-

stead has been selected. But, while this power must be exercised by the court reasonably and according as the facts of each case demand that it shall be applied, it must, as suggested, be put into operation in a case like this if the wife would retain, after the divorce, any interest whatsoever in the homestead selected from the separate estate of the husband. The court, in other words, would have to take some affirmative action to that end, or, as is declared in *Brady* v. *Kreuger*, 8 S. D. 464, [59 Am. St. Rep. 771, 66 N. W. 1083], her rights under the homestead declaration would have to be preserved by the decree, otherwise they are destroyed forever. The court not having done so in this· case, the homestead, as before asserted, so far as plaintiff's intestate is concerned, ceased to exist with the granting of the decree of divorce and the same, therefore, remained in the former owner free from any homestead claim, right or privilege of the former wife.

Whether, under such circumstances, such property would still retain the essential characteristics of a homestead, so far as the ''former owner'' is concerned, need not be decided here, although such has been declared to be· the rule in this state. (*City Store* v. *Cofer*, 111 Cal. 482, [44 Pac. 168].)

But counsel for appellant insist that the provisions of section 1474 of the Code of Civil Procedure are absolutely controlling in the matter of the devolution of homesteads, after the death of one of the spouses, regardless of whether or not the family, as it originally stood when the homestead was filed, had, prior to such death, been destroyed by a decree of divorce. That section reads: ''If the homestead selected by the husband and wife, or either of them, during their coverture, and recorded while both were living, was selected from the community, or from the separate property of the person selecting or joining in the selection of the same, it vests, on the death of the husband or wife, absolutely in the survivor.''

The argument in support of this proposition is that the word, ''survivor,'' as used in said section, means the one of the two spouses that outlives the other without regard to whether, at the time of the death of the one or the other, the marriage relation between them had been duly dissolved by the decree of a court. Of course, it must be manifest, from the views we have ventured as to the effect of the decree

of divorce on the rights of the plaintiff's intestate under the declaration of homestead, that we do not agree to such construction of section 1474 of the Code of Civil Procedure.

Indeed, applying, in the ascertainment of the true import of section 1474 of the Code of Civil Procedure, the very rule of construction, as promulgated by section 16 of said code, invoked by counsel for the appellant to establish their conception of the meaning and intention of said section 1474, the result must be, it seems clear to us, that said section does not, nor was it intended to, bear the interpretation which counsel ascribe to it.

Section 16, *supra,* declares that "words and phrases" must be "construed according to the context and the approved usage of the language; but technical words and phrases, and such other words as have acquired a peculiar and appropriate meaning in law, or are defined in the succeeding section, are to be construed according to such peculiar and appropriate meaning or definition."

The words "husband" and "wife," as applied to domestic relations, each has but one meaning. The technical meaning of those words is identical with their common or colloquial meaning, and the law can use them in no other sense. It is, therefore, not necessary to refer to and examine law or other dictionaries to ascertain their legal or only signification. They are generic terms that describe human beings of a certain class, and the mere mentioning or use of the words will as readily suggest or convey to the mind the kinds of the human family they describe as the mentioning of the word "horse" will portray to the mind the kind of quadruped that term describes. They obviously mean, respectively, as they are most tritely defined by Bouvier, "a man who has a wife" and "a woman who has a husband." As used in section 1474 of the Code of Civil Procedure, these words mean and can only mean, as descriptive of the domestic relation, just what they naturally imply, and, of course, do not mean an unmarried man and an unmarried woman As all the other words in said section refer to the words, "husband" and "wife," as so employed, we have only to look to the context of said section for the precise signification of all the vital words therein used for the purpose of defining or prescribing any rights which the legislature by said sec-

tion intended to confer upon either the husband or wife or both, and, so examining the section, it becomes very clear that the word, "survivor," as therein employed, refers to the "husband" and "wife" *as such*—that is, it applies to those individuals with reference to the legal status they bear toward each other and not, as counsel's construction of the section would have it, as mere individuals or strangers sustaining toward each other no legal relation. In other words, the true meaning of the language of the section is that the homestead selected as therein prescribed shall, upon the death of the husband *as a husband* or the wife *as a wife,* vest absolutely in the survivor of such marriage relation. Obviously, if the marriage relation was dissolved at the time of the death of either the one or the other, the deceased would have passed away not *as a husband* or *as a wife,* as the case might be, but, in contemplation of law, as a perfect stranger to the one who, in point of time, was the survivor. The irresistible result of this construction is that, in order that the homestead contemplated by said section may, upon the death of the one or the other of the spouses by whom and for whose benefit such homestead was selected, vest absolutely in the "survivor," such death must have occurred when the parties were still spouses, or, in other words, the "survivor" must be the *surviving spouse* and not merely the *surviving individual* whose character *as a spouse* had previously to the death of the other been destroyed by a decree of divorce.

Counsel for the appellant make the further point that section 146 of the Civil Code is unconstitutional in that the act within which said section was embraced was, as passed by the legislature of 1873–74, in violation of section 25 of article IV of the constitution of 1849. Said section of our first constitution reads: "Every law enacted by the legislature shall embrace but one object, and that shall be expressed in the title; and no law shall be revised or amended by reference to its title; but in such case the act revised or section amended shall be re-enacted and published at length."

The legislature of 1873–74 attempted to amend, if it did not succeed in amending, a large number of the sections of each of the four codes. (See Stats. 1873–74, p. 192.) The title of the act amending certain sections of the Civil Code is as follows: "An act to amend the Civil Code."

The objections urged against the constitutional validity of said act are that its title expresses no subject whatever, and that it fails to re-enact and publish at large the law which it purports to amend. In other words, as to the latter objection, it is the contention that, to make the act conform to the provision of the constitution referred to, in the place of publishing in the body of the act only such sections as were amended, the entire Civil Code, which constitutes one act, should have been embodied in and re-enacted by the amendatory act.

Section 146 of the Civil Code, as well as the other sections of said code as amended by the act of 1873–74, have been the accepted law of this state on the subjects to which they respectively relate for nearly forty years, and there can be no doubt that, under many of said sections, there have grown up and been established rights of the most substantial kind which might be seriously jeopardized, if not completely destroyed, by a ruling at this late date holding said sections to be void for the reasons suggested or for any reason. Even if there be merit in the points urged against said sections, it is not for a moment supposable that any court would, under the circumstances, give its sanction to a proposition whose inevitable result would be to produce at least endless confusion and perhaps the destruction of vested property rights.

But, if our views as to the meaning and intent of section 146 of the Civil Code and of section 1474 of the Code of Civil Procedure are correct, it is immaterial whether the first-mentioned section is valid or invalid. It is very clear, as we have declared, that the only right which plaintiff's intestate could have acquired to the homestead involved here was that with which the court might have invested her for a limited period under the power conferred upon it by said section 146, and, manifestly, if said section is void for the reason urged here against its validity, she could not, at the time the divorce was granted, even have acquired or been entitled, as the "innocent party," if such she had been found to be, to the enjoyment of said homestead for "a limited period."

We have found no expression in any of the cases cited by counsel for appellant in conflict with the conclusion reached here. The cases cited were where, either after the death of one or the divorce of the parties for whose benefit the home-

steads were created, an ineffectual attempt was made to enforce the payment of the claims of certain creditors by a seizure of the premises upon which the homesteads were filed, the contention of such creditors being that the peculiar facts from which the right to such homesteads arose were such as to relieve the premises of their homestead character either upon the death of one of the parties to the homestead or the divorce of such parties. (See *City Store* v. *Cofer*, 111 Cal. 482, [44 Pac. 168]; *Roth* v. *Insley*, 86 Cal. 134, [24 Pac. 853].)

The result of the conclusion at which we have arrived is, manifestly, that plaintiff's intestate has no title of any kind to the homestead in dispute, and that, as a necessary consequence, the judgment of the court below that she is not entitled to the relief sought by the complaint cannot be disturbed.

The defendant asked for and was, therefore, awarded no affirmative relief.

While the proposition is not involved here, there can be no impropriety in suggesting, if, indeed, suggestion of the proposition is necessary, that, Coad having died intestate and, there having been, so far as we are advised by the record, no new declaration of homestead filed on the property in controversy after his marriage to defendant's intestate, the plaintiff, being the only child of said Coad, so far as the record shows, would be entitled to her share, according to our law of succession, in whatever estate, including the property here involved, of which her father died seised. Of course, it will not be contended that the homestead in question here could inure to the benefit of the second wife. (*Estate of Clavo*, 6 Cal. App. 774, [93 Pac. 295].)

Necessarily, the views ventured herein dispose of the points urged against the rulings of the court in excluding as evidence the declaration of homestead and in granting the motion for a nonsuit.

For the reasons stated herein the judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.