159 Cal.App.2d Supp. 854 (1958)
324 P.2d 119
CALIFORNIA BANK (a Corporation), Plaintiff,
v.
RUTH B. SCHLESINGER, Appellant; HERBERT SHULTZ et al., Respondents.
Docket No. 9433.
Court of Appeals of California, Appellate Department, Superior Court, Los Angeles.
March 26, 1958.
*857 Albert Weiner for Appellant.
I.R. Shultz, Bertram S. Harris and Frank Alef for Respondents.
DAVID, J.
In this case, title to certain joint tenancy property was homesteaded by husband and wife. Thereafter on March 2, 1948, the wife, the defendant here, secured a final decree of divorce which did not assign the homestead as it could have done under Civil Code, section 146. On September 18, 1950, the defendant's former husband quitclaimed his joint tenancy interest to her. After the divorce, she continued to reside alone upon the property, and executed a trust deed upon it to secure a note. The creditors hold judgments upon debts of the defendant Schlesinger, incurred after the divorce, and are given judgment herein against the net proceeds held by the interpleading plaintiff for the defendant after foreclosure of the trust deed and payment of the note. The foreclosure occurred on January 15, 1957. This action in interpleader was commenced February 14, 1957. We conclude that the homestead exemption from execution existed following the divorce, and defendant is entitled to all of the funds interpleaded, since they are less than the exemption (Civ. Code, § 1260, subds. 1, 2) and their exempt character continued following the foreclosure sale to the time of this action (Civ. Code, § 1265).
[1] It is now established that a homestead can be declared upon property held in joint tenancy or tenancy in common. (Civ. Code, § 1238; Estate of Kachigian (1942), 20 Cal.2d 787, 790 [128 P.2d 865].) [2] As between a creditor and the claimant of a homestead exemption, the state of the latter's title is immaterial. (Brooks v. Hyde (1869), 37 Cal. 366.)
[3] What were the incidents to a homestead on a joint tenancy? (1) By homesteading, each party waives the right to set aside his separate interest by partition (Walton v. Walton (1943), 59 Cal. App.2d 26, 31 et seq. [138 P.2d 54]; Kaupe v. *858 Kaupe (1955), 131 Cal. App.2d 511 [280 P.2d 856]; see Barber v. Babel (1868), 36 Cal. 11, 17, and Hannon v. Southern Pac. R.R. Co. (1909), 12 Cal. App. 350, 358 [107 P. 335]). [4] (2) Each party loses the right to unilaterally convey the property (Civ. Code, § 1242; Swan v. Walden (1909), 156 Cal. 195 [103 P. 931, 134 Am.St.Rep. 118, 20 Ann.Cas. 194]) or to bind it for debts (cf. Bartholomew v. Hook (1863), 23 Cal. 277); [5] (3) the only way to terminate the homestead is by the mode provided in Civil Code, §§ 1243-1244, 1265 and 146. (Consult: Tipton v. Martin (1886), 71 Cal. 325, 328 [12 P. 244]; Lubbock v. McMann (1889), 82 Cal. 226 [22 P. 1145, 16 Am.St.Rep. 108]; see Mills v. Stump (1912), 20 Cal. App. 84, 88-89 [128 P. 349].) [6] (4) The homesteading gives exemption from forced sale under Civil Code, section 1243. Thereafter, this exemption is a continuing right, until there is an abandonment by the parties, or by the sole party claiming it. Upon any sale by the claimant, the exemption attaches to the proceeds (Civ. Code, § 1265). [7] (5) In a pending divorce action, the court may make a temporary assignment of the homestead at any stage of the proceeding; and upon dissolution is to make certain assignments of the homestead.
[8] The disposition of a homestead upon divorce is now regulated by Civil Code, section 146. Since the interest of each joint tenant is separate property, (Kaupe v. Kaupe, supra (1955), 131 Cal. App.2d 511, 513) the applicable provision for disposition on divorce is subparagraph Four: "If ... selected from the separate property of either, ... it shall be assigned to the former owner of such property, subject to the power of the court to assign it for a limited period to the [innocent party]." Civil Code, section 1265, is general in its terms: "From and after the time the [homestead] declaration is filed for record, the premises therein described constitute a homestead." There then is a statement as to survivorship when the homestead has been established by a married person, and when "in other cases"; and then provides: "in no case [emphasis added] shall it, or the products, rents, issues or profits thereof be held liable for the debts of the owner, except as provided in this title; and should the homestead be sold by the owner, the proceeds arising from such sale to the extent of the value allowed for a homestead exemption as provided in this title shall be exempt to the owner of the homestead for a period of six months next following such sale." [9] In a case, such as this, the homestead exemption of the ex-wife continued after divorce and after the ex-husband's *859 relinquishment of his property interest to her (City Store v. Cofer (1896), 111 Cal. 482 [44 P. 168]; Brandon v. Faria (1929), 99 Cal. App. 594, 597 [279 P. 192]; Estate of Teel (1949), 34 Cal.2d 349, 352, 354 [210 P.2d 1]; continues after claimant ceases to have a family: Roth v. Insley (1890), 86 Cal. 134 [24 P. 853]). [10] If a homestead can be assigned (Civ. Code, § 146), it obviously continues as a homestead after divorce. It would defeat Civil Code, sections 146 and 1265, if it were held that "since divorce terminated the family, there was no homestead to assign" to the former owner.
[11] To the extent that the property interest of each of the ex-spouses was separate, it was mandatory under Civil Code, sections 146 and 1265, that the court assign the homestead upon such interest to each separate property owner upon divorce. As they were already joint tenants, it was unnecessary to make any order as to title. The statute is mandatory, as to the homestead. A failure of the court specifically to assign the homestead back to the former owner, however, is immaterial. That which is required to be done is considered done (Civ. Code, § 3529) in such instances. This was the implied holding under like circumstances in City Store v. Cofer (1896), 111 Cal. 482 [44 P. 168]. In this case, the entire title was vested in the ex-wife before the creditors' claims were reduced to judgments, but remained subject to the homestead exemption. (City Store v. Cofer, supra (1896), 111 Cal. 482; Zanone v. Sprague (1911), 16 Cal. App. 333, 342 [116 P. 989]; Roth v. Insley, supra (1890), 86 Cal. 134; cf. Walton v. Walton, supra (1943), 59 Cal. App.2d 26; Dougherty v. White (1924), 112 Neb. 675 [200 N.W. 884, 885; 36 A.L.R. 425].) In City Store v. Cofer, supra (1896), 111 Cal. 482, it was unsuccessfully contended that the divorce ipso facto terminated the homestead exemption, citing Shoemake v. Chalfant (1874), 47 Cal. 432, 435, and Burkett v. Burkett (1889), 78 Cal. 310 [20 P. 715, 12 Am.St.Rep. 58, 3 L.R.A. 781].
[12] Under Civil Code, section 146, the right of one spouse upon divorce to secure an assignment in the property rights of the other, created by the homestead, perishes by failure to secure an assignment of that homestead right in the property of the other ex-spouse in the divorce decree. (Zanone v. Sprague, supra (1911), 16 Cal. App. 333; Lang v. Lang (1920), 182 Cal. 765 [190 P. 181].)
[13] Claimants rest their case upon the general statement made as dicta in some cases and merely recited in others, *860 usually in relation to title, that divorce terminates the homestead exemption rights because it terminates the family relationship. (Remley v. Remley (1920), 49 Cal. App. 489, 490 [193 P. 604]; Lang v. Lang, supra (1920), 182 Cal. 765; passim, Walton v. Walton, supra (1943), 59 Cal. App.2d 26, 29.) The incongruity of such dicta with Civil Code, sections 146 and 1265, has not gone unnoticed by the profession. (Consult: 26 Cal.L.Rev. 475 (1938); Healey, Disposition of Homestead on Divorce and Death (1954), 29 Los Angeles Bar Assn. Bulletin 131, 151.)
Any such unqualified statement, as applied to all incidents of a homestead, is certainly not the law in California, since the adoption of the code sections in question. The termination of the family by the majority of children, the death of one of the spouses, or a change in residence, continued residence once having been considered essential, have been abrogated as controlling factors. Superseding early statutes (Stats. 1860, p. 311; 1862, p. 519, § 5) and court decisions based upon them to the contrary (such as Santa Cruz Bank v. Cooper (1880), 56 Cal. 339; Revalk v. Kraemer (1857), 8 Cal. 66 [68 Am.Dec. 304], cited in Lang v. Lang, supra (1920), 182 Cal. 765; cf. Estate of Boland (1872), 43 Cal. 640), Civ. Code, §§ 1266-1269, make available to "any person other than the head of a family" a homestead exemption against creditors' claims. (Hohn v. Pauly (1909), 11 Cal. App. 724 [106 P. 266]; cf. Stat. 1860 p. 87 § 1; Gary v. Estabrook (1856), 6 Cal. 457.) Under the specific terms of the earlier statutes and prior to enactment of Civil Code, sections 1263, 1265, 1266-1269, it had been held that "no family, no homestead." (Change was noted in 29 C.J. p. 932, note 86, citing Watson v. His Creditors (1881), 58 Cal. 556 and Santa Cruz Bank v. Cooper, supra (1880), 56 Cal. 339, both under the 1862 statute; Gee v. Moore (1859), 14 Cal. 472 and Revalk v. Kraemer, supra (1857), 8 Cal. 66, under the 1851 statute. This is no longer the rule, under Roth v. Insley, supra (1890), 86 Cal. 134, citing Civ. Code, § 1265.)
Confusing and contradictory statements are found in many homestead cases. There are instances in which later cases have cited earlier ones, which have been overruled in the interim, or which have been superseded by later statutes or code sections. Case law dependent upon the terms of early statutes has been applied, though such statutes have long since been repealed and superseded, or amended to overcome the previous case law. Under the early homestead acts by which *861 only husband or wife, or head of the family, could declare a homestead, the homestead was held to be abandoned or dissolved, upon a variety of circumstances. Some cases announced, as do the present code sections, that once a homestead, always a homestead, unless abandoned as provided by the code, (Taylor v. Hargous (1854), 4 Cal. 268, 273 [60 Am. Dec. 606]; Tipton v. Martin, supra (1886), 71 Cal. 325 [12 P. 244]), and that a transfer of property rights in which both husband and wife joined did not terminate the homestead (Bowman v. Norton (1860), 16 Cal. 213). Hence, the parties could not seek partition (Barber v. Babel, supra (1868), 36 Cal. 11, 17). Under the specific terms of early acts, the homestead was held to terminate when a family ceased to exist because of death of one of the parties (Revalk v. Kraemer, supra (1857), 8 Cal. 66, 74; Shafter, J. in McQuade v. Whaley (1867), 31 Cal. 526, 535; Gee v. Moore, supra (1859), 14 Cal. 472, 476-477; Johnston v. Bush (1874), 49 Cal. 198); or when minor children composing the family reached their majority so that one parent ceased to be head of a family (as required by Stats. 1860 p. 311; Gambette v. Brock (1871), 41 Cal. 78, 79); or by desertion by one of the spouses (cf. 29 C.J. p. 933 § 345 and notes 89-99) though this would not work an abandonment of the homestead exemption as to the other spouse (Lies v. DeDiablar (1859), 12 Cal. 327); or by nonresidence of a claimant (Gregg v. Bostwick (1867), 33 Cal. 220 [91 Am. Dec. 637]; cf. Mann v. Rogers (1866), 35 Cal. 316); or by cessation of residence on the homestead thereafter. (Cf. Dawley v. Ayers (1863), 23 Cal. 108; Barber v. Babel, supra (1868), 36 Cal. 11, 20); contra: (Holden v. Pinney (1856), 6 Cal. 234); or by nonpossession by a claimant (In re Crowey (1886), 71 Cal. 300); or when a widow remarried (Estate of Boland, supra (1872), 43 Cal. 640.)
The act of 1867-1868, page 117, section 3, specifically provided that homesteads declared by joint tenants or tenants in common were subject to partition by the parties. (Higgins v. Higgins (1873), 46 Cal. 259.)
[14] In contrast to previous California homestead laws, the effect of Civil Code, sections 1265 and 146, was to maintain the declared homestead as an estate in land, which only could be abandoned or relinquished in the statutory mode, not by cessation or change of the status of the personal relationships upon which the homestead was declared (Roth v. Insley, supra (1890), 86 Cal. 134). [15] Death does not destroy the *862 homestead nor the exemption (Watson v. Peyton (1937), 10 Cal.2d 156 [73 P.2d 906]; Dickey v. Gibson (1896), 113 Cal. 26 [45 P. 15, 54 Am.St.Rep. 321]; Ions v. Harbison (1896), 112 Cal. 260 [44 P. 572]; Sanders v. Russell (1890), 86 Cal. 119, 120 [24 P. 852, 21 Am.St.Rep. 26]; In re Ackerman (1889), 80 Cal. 208 [22 P. 141, 13 Am.St.Rep. 116]; Tyrrell v. Baldwin (1889), 78 Cal. 470, 475 [21 P. 116]; Estate of Ronayne (1951), 104 Cal. App.2d 53 [231 P.2d 105]). [16] A childless widower is entitled to maintain the homestead exemption. (Robinson v. Dougherty (1897), 118 Cal. 299 [50 P. 649].) [17] Nonresidence does not destroy the exemption (Tipton v. Martin, supra (1886), 71 Cal. 325, 327, and discussion; cf. Bowman v. Norton, supra (1860), 16 Cal. 213; Barber v. Babel, supra (1868), 36 Cal. 11, 18; Herrold v. Reen (1881), 58 Cal. 443; Porter v. Chapman (1884), 65 Cal. 365 [4 P. 237]). Temporary absence does not constitute an abandonment (Thatcher v. Van Bever (1934), 139 Cal. App. 658); nor removal to another state and acquisition of residence there (Tipton v. Martin, supra (1886), 71 Cal. 325; Lubbock v. McMann, supra (1889), 82 Cal. 226, 229).
In Zanone v. Sprague, supra (1911), 16 Cal. App. 333, a homestead was declared on the separate property of the husband by his declaration. In a divorce proceeding, there was no assignment of the homestead under Civil Code, section 146, but it was held the property reverted to the husband, the former owner, when the decree was silent; and though indicating (p. 338) that the homestead as a separate estate in the wife was destroyed by divorce, still recognized that the husband, as former owner, was entitled to the homestead exemption of his estate (p. 342) citing City Store v. Cofer, supra (1896), 111 Cal. 482. It perhaps is important to note that Brady v. Kreuger (1896), 8 S.D. 464 [66 N.W. 1083, 1085, 59 Am.St.Rep. 771], and Rosholt v. Mehus (1894), 3 N.D. 513 [57 N.W. 783, 23 L.R.A. 239], were cited. These cases hold no more than that where the divorced wife holds no interest, even as dower, in the husband's separate property, and no longer being a wife could never be a widow, all of her claims upon the husband's property ceased upon divorce. In other words, the qualified joint tenancy during marriage that she had in her husband's property was no more. This was the contention of the appellant in Lang v. Lang, supra (1920), 182 Cal. 765, supported by the single citation of Zanone v. Sprague, supra (1911), 16 Cal. App. 333, as disclosed in the briefs on file. Zanone v. Sprague did not hold *863 that as to creditors, her own interest was no longer protected by the homestead; since Civil Code, section 1265, specifically provides that as to property assigned to its former owner upon dissolution of the marriage, the exemption extends to "the debts of the owner."
In Lang v. Lang, supra (1920), 182 Cal. 765, neither Civil Code, section 146, nor Civil Code, section 1265, was cited to the court, nor was City Store v. Cofer, supra (1896), 111 Cal. 482, though its rule was expressly recognized in Zanone v. Sprague, supra (1911), 16 Cal. App. 333, which was argued to the court. As disclosed by the opinion, and the briefs filed upon the appeal, Lang v. Lang, supra (1920), 182 Cal. 765, was an appeal from an interlocutory judgment in partition under Code of Civil Procedure, section 752, brought by an ex-wife against her former spouse, to divide the homesteaded community property. The record on appeal indicates that record title to the property homesteaded was in the husband alone. Although the pleadings in the divorce action did not put the disposition of property in issue (separate property would not be an issue) nor disposition of the homestead, it was assigned to the plaintiff husband, by the final decree. Perhaps, the trial court believed at that juncture that under Civil Code, section 146, such assignment was automatic and mandatory as to homesteaded property formerly belonging to the husband, as evidenced by the record title. The ground of divorce was the desertion of the wife, which at least prior to Civil Code, section 1265, and 1243 was by some authorities held to be an abandonment of the homestead upon her part but not on the part of the innocent spouse. (29 C.J. p. 933 § 345, note 99.)
The final decree of divorce secured by Lang, assigning the homestead to him, became a final judgment. Thereafter, the former wife instituted a suit to partition the homesteaded property under Code of Civil Procedure, section 752, claiming that in fact it was community property. Mr. Lang interposed a general demurrer, claiming (a) the divorce decree was final and conclusive as to his property rights, (b) that if not, the homestead had not been abandoned; and could only be abandoned as provided in Civil Code, section 1243; and that while the homestead continued, no action for partition could be entertained. (Hannon v. Southern Pac. R.R. Co., supra (1909), 12 Cal. App. 350, 358.) His demurrer having been overruled, he failed to answer; and upon his default the *864 trial court upheld the wife's claim that the property was community and entered an interlocutory judgment to partition the property. The appeal was brought to the Supreme Court after decision by the District Court of Appeal. The District Court of Appeal held that since the division of property was not placed in issue in the divorce action, the trial court's judgment assigning the husband all the homestead rights was not conclusive upon the ex-wife, plaintiff therein; and partition of the community property was appropriate. (Cases cited in that court were Coats v. Coats (1911), 160 Cal. 671 [118 P. 441, 36 L.R.A.N.S. 844] which did not relate to divorce, but annulment; De Godey v. Godey (1870), 39 Cal. 157; Biggi v. Biggi (1893), 98 Cal. 35 [32 P. 803, 35 Am.St.Rep. 141]; Kirschner v. Dietrich (1895), 110 Cal. 502 [42 P. 1064]; Brown v. Brown (1915), 170 Cal. 1 [147 P. 1168].)
The Supreme Court reached the same conclusion on this point.
In Lang v. Lang, supra (1920), 182 Cal. 765, the term "homestead" is used in the sense of the property right imposed by the homestead upon the legal title, rather than as the homestead exemption from claims of creditors. Where the homestead is placed on community property by husband and wife, it restricts the right of disposition by the husband or wife of their several interests. There is a mutual encumbrance against severance or disposition, reciprocally against the other's interest. In holding that dissolution of the marriage terminated the "homestead," the precise point was that partition was no longer inhibited by the reciprocal interest of each in the community property interest of the other. (Estate of Winslow (1898), 121 Cal. 92 [53 P. 362].) Partition of the property might have proceeded under Civil Code, section 147, if properly claimed in the divorce action. Since it was not, the court held partition was available under Code of Civil Procedure, section 752. The case of Zanone v. Sprague, supra (1911), 16 Cal. App. 333, upon which the Supreme Court relied, cited the case of City Store v. Cofer, supra (1896), 111 Cal. 482, but indicated that it was not necessary to decide any question as to the continuance of the homestead exemption. City Store v. Cofer, supra, was neither cited nor negatived by the Supreme Court (p. 771) as it referred to Zanone v. Sprague, supra (1911), 16 Cal. App. 333. [18] Even if the homestead as to the interest of one party should cease, a homestead exemption may be held by one *865 joint tenant or tenant in common, though the homestead may not extend to the other tenant's interest. (Estate of Kachigian, supra (1942), 20 Cal.2d 787; Walton v. Walton, supra (1943), 59 Cal. App.2d 26.)
[19] Language used in an opinion is to be understood in the light of the facts and the issue then before the court. (Porter v. Bakersfield & Kern Elec. Ry. Co. (1950), 36 Cal.2d 582, 590 [225 P.2d 223], on the proposition no claim, no lawsuit.)
Lang v. Lang, supra (1920), 182 Cal. 765, did not determine the rule when joint tenancy property was concerned. The court did not consider the mandatory language of Civil Code, sections 146-147, that upon divorce the homestead selected from the separate property of the parties "shall be assigned" to the former owner. As authority, the opinion should be confined to the facts therein under consideration (chief of which was defendant's default and admission of the allegations of the complaint in partition). [20] The language "no family, no homestead" is not stare decisis as to subsequent decisions when such application will be plainly inconsistent with the statute. (Cardenas v. Miller (1895), 108 Cal. 250 [39 P. 783, 41 P. 472, 49 Am.St.Rep. 84]; Wood v. Roach (1932), 125 Cal. App. 631, 638 [14 P.2d 170].) [21] "But where, as in this case, the code provisions are plain and unequivocal upon the point in controversy it is hardly necessary to cite adjudicated cases to support the same, as the statute law must control whether such cases are in harmony therewith or not." (Dover v. Pittsburg Oil Co. (1904), 143 Cal. 501, 505 [77 P. 405].) [22] Obiter dicta is not binding in later controversies (Greenfield v. Mather (1948), 32 Cal.2d 23 [194 P.2d 1]; cf. Mix v. Ingersoll Candy Co. (1936), 6 Cal.2d 674, 679 [59 P.2d 144]); and an oft repeated dictum does not overrule a prior decision specifically determining the question. (Cohn v. Central Pac. R.R. Co. (1886), 71 Cal. 488 [12 P. 498].) [23] Conformity never is required if it would perpetuate a manifest error or absurdity. (Childers v. Childers (1946), 74 Cal. App.2d 56, 61-62 [168 P.2d 218].) [24] A single decision, made without taking notice of a statute and in fact, setting aside the statute, cannot be invoked as authority under the rule of stare decisis. (Field, C.J. in Duff v. Fisher (1860), 15 Cal. 375, 382.)
We cannot presume that Lang v. Lang, supra (1920), 182 Cal. 765, determines more than Zanone v. Sprague, supra *866 (1911), 16 Cal. App. 333, respecting the rights of one exspouse in the separate property of the other. We cannot accept the assumption that "no family, no homestead" was meant to apply to any other rights of the parties. We cannot presume the Supreme Court meant to subvert the legislative intent that the homestead exemption should continue as to the separate property of the parties after divorce (Civ. Code, §§ 146 and 1265) by the sophistry that upon divorce, there were no homestead exemption rights to continue. The Supreme Court had declared its intention otherwise in City Store v. Cofer, supra (1896), 111 Cal. 482. It seems clear that there is no conflict between City Store v. Cofer, supra, and Lang v. Lang, supra, but that they in fact complement each other, if Lang v. Lang is held to the precise holding, which was, as in Zanone v. Sprague, supra, that one who did not secure an assignment of the homestead interest in the property of the other spouse, or in the property interest of the other spouse in the divorce decree, had no further rights in such property of the other owner; and City Store v. Cofer, supra, declares that in the possession of the former owner of the separate property, pursuant to Civil Code, sections 146 and 1265, that owner's several interest still is covered by a homestead exemption from creditors.
That the Supreme Court in Lang v. Lang, supra (1920), 182 Cal. 765, intended this construction, and that the language that the termination of the family terminated the homestead, related only to the precise situation before the court, is supported by the citation of Rosholt v. Mehus, supra, 3 N.D. 513 [57 N.W. 783, 23 L.R.A. 239], and Bahn v. Starcke (1896), 89 Tex. 203 [34 S.W. 103]. The Texas statute made the continuance of the homestead dependent upon the family relationship. (Consult: 29 C.J. p. 934, § 346, text and note 19.) In California, Civil Code, sections 146 and 1265, provide otherwise. The Texas statute did not provide for assignment of the homestead, but only for division of the property on divorce. (Bahn v. Starcke, supra.) As cited in Lang v. Lang, supra, and Zanone v. Sprague, supra (1911), 16 Cal. App. 333, the cases of Brady v. Kreuger, supra, 8 S.D. 464 [66 N.W. 1083, 59 Am.St.Rep. 771], Rosholt v. Mehus, supra, 3 N.D. 513 [57 N.W. 783, 23 L.R.A. 239], and Bahn v. Starcke, supra, 89 Tex. 203 [34 S.W. 103], go no further than to support the rule announced in Civil Code, section 146, that dissolution of a marriage terminates the wife's homestead *867 interest in what had been her husband's separate property, unless assigned to her.
As of 1920, the date of Lang v. Lang, supra, a homestead could not be created in joint tenancy property. The relations attending such a homestead, now valid, were beyond its purview. (Cf. Estate of Kachigian, supra (1942), 20 Cal.2d 787, 790.)
Likewise, it should be noted that in 1920, when Lang v. Lang was decided, the wife's interest in the community property interest of the husband was stated to be a mere expectancy (McKay v. Lauriston (1928), 204 Cal. 557, 565 [269 P. 519]), which logically could be defeated when she ceased to be such, unless some interest was assigned her in a divorce decree. It became a "present, existing and equal interest" in 1927 by adoption of Civil Code, section 161a. This negatives the effect of any present analogy with the South Dakota and Texas cases. (Cf. 27 C.J.S. Divorce, p. 837, § 180; Cassas v. Cassas (1954), 73 Wyo. 147 [276 P.2d 456, 464].) Lang v. Lang did not decide that Mr. Lang was not entitled to a homestead exemption as against creditors as to property partitioned to him; "he was no longer entitled to a homestead exemption of the character here involved" so as to prevent partition. The "character here involved" did not concern any exemption from execution, but only the reciprocal rights of each of the ex-spouses in the property interests of the other in the former community property, after the divorce.
Grupe v. Byers (1887), 73 Cal. 271 [14 P. 863], superficially resembles the factual situation in the instant case. The decision supports the validity of the trust deed executed by the defendant herein, after marriage was dissolved. Since 1951 this result would follow under Civil Code, sections 1242 and 1265. Later cases, such as Estate of Teel, supra (1949), 34 Cal.2d 349, which held the homestead is not abandoned, are inconsistent with Grupe v. Byers.
In Shoemake v. Chalfant, supra (1874), 47 Cal. 432, it clearly appears from the reported argument for respondent (p. 434) that the divorce decree provided that upon dividing the property between the spouses that each held his or her interest "free of all claims on the part of the other, or those claiming by, through or under him or her" and "We do not argue that merely because Shoemake was divorced from his wife the homestead was destroyed, but that the decree splitting up the property destroyed it. And we cannot now inquire *868 whether the Court ought to have so decreed or not." The court apparently adopted this view and stated as to the exemption claimed to exist on the property partitioned to one, from a levy made by the other, (p. 435) "The decree was as effectual in its results as would have been a declaration of abandonment."
The case is not authority, therefore, for the view that upon divorce, the homestead exemption ceases. This is made quite apparent by considering the legislative history of Civil Code, section 146. As effective at the time the Chalfant case was tried, Civil Code, section 146, required that the community property be equally divided, "and the Court granting the decree must make such order for the division of the community property, or the sale and the equal distribution of the proceeds thereof, as the nature of the case may require." No other option was given. However, by the provisions of code amendments 1873-74, chapter 612, page 191, section 33, the entire section was rewritten, and the provisions for assignment of the homestead were added. Such a fundamental change was unnoticed in later cases which erroneously stated, "no family, no homestead."
Remley v. Remley (1920), 49 Cal. App. 489, 490 [193 P. 604], held that upon assignment of the homestead pursuant to Civil Code, section 146, its character as such was destroyed, citing Shoemake v. Chalfant, supra (1874), 47 Cal. 432, which did not so hold; Grupe v. Byers, supra (1887), 73 Cal. 271, which is now overruled; and Simpson v. Simpson (1889), 80 Cal. 237. This latter case did not so hold. It held that in a purported assignment of a homestead, the attempt to limit an estate and attempt to create a trust were bad; and hence that the ex-husband had no remaining estate which he could claim against the wife. Its principal authority was the dicta of Lang v. Lang, supra (1920), 182 Cal. 765.
We are satisfied that Civil Code, sections 146 and 1265, continued the homestead protection to defendant, (Johnson v. Brauner (1955), 131 Cal. App.2d 713, 717-718, 722 [281 P.2d 50]); and in her alone after quitclaim from her husband, while she occupied the premises as a home (Roth v. Insley, supra (1890), 86 Cal. 134; Hall v. Fields (1891), 81 Tex. 553 [17 S.W. 82]; Philbrick v. Andrews (1894), 8 Wash. 7 [35 P. 358]; Dougherty v. White (1924), supra, 112 Neb. 675 [200 N.W. 884, 36 A.L.R. 425]; Blandy v. Asher (1880), 72 Mo. 27). Treating the foreclosure sale as a sale authorized by her, the excess proceeds are exempt. (Civ. Code, § 1265.)
*869 The judgment is reversed with directions to enter judgment for appellant Schlesinger.
Swain, J., concurred.
BISHOP, P.J.
I concur. It is apparent that the cases are not all consistent, and I do not join in the endeavor to save the face of Lang v. Lang (1920), 182 Cal. 765 [190 P. 181], by an attempt to differentiate it. It, with its "no family, no homestead," is so at odds with other cases, and with the provisions of sections 146 and 1265, Civil Code, that I cannot accept its conclusion that with the divorce decree the homestead is at an end, without failing to follow those cases that find the homestead still survives. While I adhere to the principle that this court should follow, not disregard, decisions of our higher courts, even should they seem to me to be in error, I cannot govern my action by this principle when the decisions lead in two different directions.