[Civ. No. 19396. First Dist., Div. One. Feb. 28, 1961.]

Estate of CATHERINE EMMA McINTYRE, Deceased. COUNTY OF SAN MATEO, Appellant, v. PHILIP J. O'DONNELL, as Executor, etc., Respondent.

Keith C. Sorensen, District Attorney, and L. M. Summey, Deputy District Attorney, for Appellant.

Jane Logan for Respondent.

COAKLEY, J. pro tem.*—The county of San Mateo appeals from an order of the superior court of that county, sitting in probate. The order directs that the proceeds of the sale of a recorded homestead be set apart to legatees described below, after payment of costs of administration and funeral expenses. Such an order is appealable. (Prob. Code, § 1240.) The appeal is presented upon an agreed statement. (Rule 6, Rules on Appeal.) The respondent is the executor. The will is holographic.

The will directs that all property both real and personal be sold and the proceeds distributed as follows: (1) $1,000 to the Redwood City Junior Chamber of Commerce, to be used for charitable purposes, and (2) the remainder to three named legatees in equal shares. The executor is one of the legatees. None of the legatees appears to be related to the testatrix. The estate consisted of approximately $500 in cash and the decedent's home. A homestead had been declared on the real property by the decedent and her husband in 1951, as provided in division 2, part 4, title 5 of the Civil Code. The parties treat the testatrix as the surviving spouse and owner of the homestead. The executor sold the real property pursuant to the instructions in the will. The sale was confirmed for a net price of approximately $6,700. Costs of administration and other preferred claims (Prob. Code, § 950) were ordered paid, first out of the cash on hand at death, and the balance from the proceeds of the sale of the real property. Without the

---

*Assigned by Chairman of Judicial Council.

proceeds of the sale there were insufficient funds with which to pay costs of administration and preferred claims. The balance on hand is sufficient to pay the three general creditors whose claims were approved in the amount of approximately $1,100, to pay the $1,000 specific bequest and to pay approximately $1,000 each to the three residuary legatees. The appellant is one of the three general creditors whose claims will not be paid if the order is affirmed. Appellant's claim is for hospitalization and drugs furnished the decedent in 1958, but is not an expense of last illness.

The parties are agreed as to the facts but are in disagreement as to the correct statement of the issue. We hold the issue to be: Are the proceeds of a testamentarily directed sale of a homestead exempt from the payment of claims of general creditors whose claims have been allowed and approved? We hold that the proceeds are not exempt.

Respondent rests his case squarely upon Civil Code, section 1265, and on *Estate of Fath* (1901), 132 Cal. 609 [64 P. 995]; *Estate of Muntz* (1924), 69 Cal.App. 404 [231 P. 371]; and *Estate of Izedorio* (1929), 100 Cal.App. 469 [280 P. 171], which construe Civil Code, section 1265.

That portion of Civil Code, section 1265, on which respondent relies reads as follows:

". . . upon the death of the person whose property was selected as a homestead, it shall go to the heirs or devisees, subject to the power of the superior court to assign the same for a limited period to the family of the decedent; but in no case shall it, or the products, rents, issues or profits thereof be held liable for the debts of the owner, except as provided in this title; . . ." It is of no help to the respondent. Construed most liberally in favor of respondent, the section provides that if homestead property is devised or passes by intestacy "it" and its "products, rents, issues or profits" shall be exempt from the debts of the owner. "It" clearly refers only to the homestead property, i.e., the dwelling house, together with outbuildings, and the land on which the same are situated. (Civ. Code, § 1237.) "[P]roducts, rents, issues or profits" refer not to the property itself or to its proceeds on sale but to the income derived from the property while enjoying homestead status. An example, would be income derived from the rental of a room, a flat, a garage, or produce raised on the land comprising the homestead. (See *People* v. *Gustafson* (1942), 53 Cal.App.2d 230 [127 P.2d 627].) Civil Code, section 1265, by its terms exempts the *proceeds* arising from

the sale of the homestead, only while such proceeds are in the hands of the homestead owner, and then for a period of six months only. (See also Civ. Code, § 1265a.) No logical reasons appear to support the view that although the *proceeds* are exempt from the claims of creditors for only six months while in the hands of the homestead owner, for whose benefit and that of his or her family the law is solely intended (see discussion *infra* as to the purpose of the homestead law), such proceeds are nevertheless exempt from creditors' claims for all time when bequeathed to strangers.

The respondent has cited no case holding that in the face of a sale pursuant to testamentary direction, the homestead property nevertheless retains the attributes of real property. To the contrary, "When a will directs the conversion of real property into money, such property and all its proceeds must be deemed personal property from the time of the testator's death." (Prob. Code, § 124.)

Further, as held in *Fath, supra,* upon the death of the survivor of the homestead, leaving no minor child, "there ceased to be any family for whose benefit the exemption existed, *and the homestead itself ceased to exist.*" (P. 612; emphasis supplied.) It also ceases to exist when it is abandoned or conveyed to a third party. (Civ. Code, § 1243; *First Trust & Savings Bank* v. *Warden* (1936), 18 Cal.App.2d 131 [63 P.2d 329].)

In *Estate of Fath, supra,* 132 Cal. 609; *Estate of Muntz, supra,* 69 Cal.App. 404; and *Estate of Izedorio, supra,* 100 Cal. App. 469, relied on by the respondent, there were one or more general creditors whose claims would not be paid if the property, or its proceeds on probate sale, were declared exempt under the homestead law. In *Fath* and *Muntz* it was held that the heirs were entitled to take the homestead property free of claims of general creditors. In the Izedorio case it was necessary for the administratrix to sell the homestead property in order to pay the expenses of administration. In that case, this court affirmed the order of the lower court directing that the heirs were entitled to have the balance of the proceeds distributed to them free from the claims of general creditors.

There are important factual differences between those cases and ours: (1) There, there was no testamentary direction to sell the property during probate and distribute the proceeds, as in our case; and (2) there, the persons entitled to receive the property on distribution, whether by bequest or succession,

were children of the decedent. In our case they are not related to the decedent.

There is language in the cases cited which, if broadly construed, would support the respondent's contention and require an affirmance of the order herein. However, because of what we believe to be the intent and purpose of our homestead law, we apply the rule stated in *Porter* v. *Bakersfield & Kern Electric Ry. Co.* (1950), 36 Cal.2d 582, 590 [225 P.2d 223], which holds: "It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court." Thus limited, the cited cases are not authority for the order in this case.

The purpose of the homestead law is set forth in *Fath, supra,* in these words: "The object of all homestead legislation is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of a home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity or improvidence, or from the importunity of their creditors. Such legislation, being of a remedial character, is to receive a liberal construction." (P. 613.) *Keyes* v. *Cyrus* (1893), 100 Cal. 322, 326 [34 P. 722, 38 Am.St.Rep. 296], is to the same effect: "The manifest object of the section is the support of the family, and to make provision for their support and maintenance. These demands of the family are deemed superior to those of heirs or creditors." (See also 25 Cal.Jur. 2d 306.) "The object of the homestead law is to protect the homesteader and those dependent upon him or her in the enjoyment of a domicile not exceeding $5,000 [now $12,500] in value, and to this end a liberal construction of the law and facts will be indulged by courts. When this object has been accomplished courts will not suffer this salutary statute to be used as a shield behind which those who would deal unjustly with creditors may find refuge." (*Marelli* v. *Keating* (1929), 208 Cal. 528, 531 [282 P. 793]; see also *Zanone* v. *Sprague* (1911), 16 Cal.App. 333 [116 P. 989].) Clearly, the purpose is to protect *only* the homestead owner and his family. We have been referred to no case in which the protection, i.e., the homestead exemption, was extended upon the death of the homestead owner leaving no spouse or family, to favor strangers over general creditors. Such a construction is unreasonable and in the absence of compelling authority we decline to adopt it as against that which to us

is the more reasonable interpretation. (*Department of Motor Vehicles* v. *Industrial Acc. Com.* (1939), 14 Cal.2d 189 [93 P.2d 131].)

The agreed statement on appeal and the briefs raise only a question of law as to the proper application of the homestead exemption. The intention of the testatrix is not discussed. We, therefore, decide the case upon the issue as presented. However, we make the observation that since the homestead terminated (1) by direction of the testatrix to sell it, and (2) because she left no spouse or children to receive it the rights of general creditors are not unlike those in the *Estate of Kirby* (1926), 199 Cal. 135 [248 P. 517]. Except for the absence of a homestead the facts in that case and ours are almost identical. In *Kirby*, the estate consisted of a small amount of cash, and an improved parcel of real estate. The will directed that the real estate be sold and the proceeds distributed to named legatees, including one who was bequeathed one-third of the proceeds of the sale. In determining whether the testatrix intended that said legatee should receive one-third of the proceeds of the sale or one-third of the estate after payment of all claims, the court said at page 138: ''She makes no mention of her debts or of expenses of administration. It must be presumed, however, that she knew she had certain debts and that there would be expenses incurred in the settlement of her estate. It must also be assumed that she knew that these must be paid before any of such proceeds of said sale or any of her estate could be distributed to her legatees. It is apparent, therefore, that in the making of the said bequests she did so with the knowledge that it would be necessary for her executrix to pay the debts of the estate and the expenses of administration before her legatees could be paid the respective sums of money bequeathed to them, and that her intention was that such bequests would become effective only as to the amount of her estate remaining in the hands of her executrix after the payment of all just and legal claims against the same.''

The order is reversed and the claim of the appellant is directed to be paid.

Bray, P. J., and Tobriner, J., concurred.